2012 Ark. App. 108

**Gabrielle HILL, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Child, Appellees.**

**No. CA 11–896.**

Court of Appeals of Arkansas.

Feb. 1, 2012.

Deborah Ruth Sallings, Little Rock, AR, appellant.

Tabitha Baertels McNulty, Little Rock, AR and Keith L. Chrestman, Jonesboro, AR, for appellee.

RAYMOND R. ABRAMSON, Judge.

Appellant Gabrielle Hill appeals an order terminating her parental rights to her four-year-old daughter, T.H., arguing that (1) the termination petition should have been dismissed for failure to conduct a hearing within the statutorily prescribed time period and (2) there was insufficient evidence to support termination.

On December 10, 2009, the Arkansas Department of Human Services (DHS) obtained a 72–hour hold on T.H. after Hill was arrested in LeFlore County, Oklahoma, on a probation violation.[1] DHS filed a petition for emergency custody on December 14, 2009, which was granted that same day.

An adjudication hearing was held on February 11, 2010. Ms. Hill was not present at the hearing because she remained incarcerated in Oklahoma serving a three-year sentence upon revocation of her probation. An order finding T.H. dependent-neglected was entered on February 17, 2010. The court set the goal for the case as reunification and ordered Ms. Hill to complete parenting classes, obtain stable housing and income, submit to a psychological evaluation and participate in recommended treatment, and resolve her pending criminal issues.

A permanency-planning hearing was held on July 8, 2010. Ms. Hill was still incarcerated in Oklahoma at that time. At the hearing, the court specifically found that Ms. Hill was expected to be incarcerated for a period of time that would constitute a substantial portion of T.H.'s life. As a result, the court found that it was not in the best interest of T.H. to return her to her mother's custody. The goal of the case was, therefore, changed to termination of parental rights and adoption. The court scheduled a termination hearing for December 17, 2010.

On November 15, 2010, Ms. Hill requested a continuance of the termination hearing and asked that the December 17, 2010 hearing be treated as another review hearing. The request for a continuance was based on the fact that Ms. Hill was incarcerated, but was expected to be released in January 2011 and that a continuance would allow her to be present at and participate in the termination hearing.

---

1. Prior to the birth of T.H., Ms. Hill pled guilty in Oklahoma to a charge of child abuse and was placed on probation for three years. The circumstances surrounding her convic- tion are unknown, but, because of the timing of the charge, it is clear from the record that the charge involved a child other than T.H.

On November 17, 2010, DHS filed its petition to terminate Hill's parental rights, alleging as its sole ground that Ms. Hill had been "sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life." DHS also filed a notice of change of hearing reflecting the continuance requested by Ms. Hill, setting a review hearing for December 16, 2010, and setting the termination hearing for January 28, 2011.

At the second permanency-planning hearing on December 16, 2010, the trial court once again set the goal as termination and adoption. The court found that Ms. Hill was incapable of meeting T.H.'s needs because of her incarceration. The termination hearing was then rescheduled for February 18, 2011.

On February 7, 2011, DHS filed another "notice of change of hearing," rescheduling the termination hearing for March 18, 2011. A day before the hearing, the trial court entered an order resetting the hearing for May 20, 2011.[2]

The termination hearing was finally held on May 20, 2011. Ms. Hill was still incarcerated. At that time, counsel for Ms. Hill requested that the petition be dismissed on the basis that the hearing had not been held within ninety days as required by Arkansas Code Annotated section 9–27–341(d) (Repl.2009). The court denied the motion. Counsel renewed the motion at the close of the testimony, and it was again denied.

At the hearing, caseworker Gary Watkins testified that, at the time of the hearing, T.H. was three and a half years old and had been in DHS custody for approximately eighteen months. He stated that, during the entire time T.H. had been in DHS custody, Ms. Hill had been incarcerated in Oklahoma. He further stated that

T.H.'s foster parents had expressed a desire to adopt her and that he did not know of any significant problems that would delay adoption.

On cross-examination, Watkins testified that, since he had taken over the case in April 2011, he had been unable to communicate with Ms. Hill. He stated that his records did not indicate whether the previous caseworkers had been in contact with Ms. Hill. He did state that Ms. Hill had written some letters to DHS, but he did not know whether anyone from DHS had responded.

After reviewing the file and hearing the testimony and arguments of counsel, the court found that DHS had shown by clear, cogent, and convincing evidence that it was in T.H.'s best interest that the petition for termination of parental rights be granted. The court noted that she had been out of the mother's home for a period in excess of twelve months and that T.H. was readily adoptable. The trial court also found that Ms. Hill was incarcerated in the Oklahoma Department of Corrections for a period of time that constituted a significant portion of the child's life. The trial court noted that T.H. was twenty-five months old at the time she was taken into custody, and, at the time of the hearing, she was three and a half years old. Thus, T.H. had been in custody 42 percent of her life due to Ms. Hill's incarceration. The court further noted that, if Ms. Hill were not released for another year and a half, T.H. would have been out of her mother's care for 58 percent of her life at that point. Based on these findings, the trial court granted the petition to terminate. Ms. Hill now appeals.

For her first point on appeal, Ms. Hill argues that the trial court erred in denying her motion to dismiss for failing

---

**2.** There is no indication in the record why the hearings were continued.

to conduct the termination hearing within ninety days after the petition for termination was filed, citing Arkansas Code Annotated section 9–27–341(d) (Repl.2009), which provides that the court "shall conduct and complete" the termination-of-parental-rights hearing "within ninety (90) days from the date the petition for termination of parental rights is filed." Based on this language, Ms. Hill asserts that the trial court lost jurisdiction to hear the petition after the ninety-day period had expired. However, although section 9–27–341(d) speaks in mandatory terms, the General Assembly did not provide a sanction for a trial court's failure to hold a hearing within the prescribed time, and there is no evidence that the loss of jurisdiction was intended. *See, e.g., Wade v. Ark. Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999); *Daniels v. State*, 333 Ark. 620, 970 S.W.2d 278 (1998); *Hattison v. State*, 324 Ark. 317, 920 S.W.2d 849 (1996); *Cook v. State*, 274 Ark. 244, 623 S.W.2d 820 (1981).

A similar argument was made recently in *D.B. v. State*, 2011 Ark. App. 151, 2011 WL 693585, in which D.B. objected to the failure to have an extended juvenile jurisdiction (EJJ) hearing within the ninety days required by statute. In *D.B.*, we acknowledged that the basic rule of statutory construction, to which all other interpretive guides must yield, was to give effect to the intent of the legislature. We further acknowledged that, although penal statutes are to be strictly construed, nothing should be taken as intended which was not clearly expressed. *Id.* As a result, we held that, because there was nothing expressed in Arkansas Code Annotated section 9–27–503(a) about the effect of noncompliance and nothing that indicated that the time limit was jurisdictional, noncompliance with the time limits for the EJJ hearing did not deprive the court of jurisdiction.

Based on the foregoing, we hold that the failure of the trial court to hold the termination hearing within ninety days of the filing of the petition did not deprive the trial court of jurisdiction, and the trial court did not err in denying Ms. Hill's motion to dismiss.

■ Finally, we conclude that reversal would not be appropriate in the absence of a showing of prejudice resulting from the time delay. Ms. Hill has failed to prove prejudice. In fact, counsel for Ms. Hill initially requested a continuance so that Ms. Hill could be present at the termination hearing. Then, at the termination hearing, counsel requested the dismissal in order to force DHS to refile the petition, thereby delaying the hearing even further "so that my client will have an opportunity to be here for this termination hearing." Thus, it is clear that Ms. Hill considered any delay in the proceedings to be beneficial as opposed to prejudicial to her.

Ms. Hill next argues that the evidence was insufficient to support a termination of parental rights. An order forever terminating parental rights must be based on clear and convincing evidence that termination is in the child's best interest. Ark. Code Ann. § 9–27–341(b)(3)(A) (Repl. 2009). Factors to consider in determining best interest are the likelihood of adoption and potential harm caused by returning the child to the custody of the parent. *Id.* Additionally, DHS must prove at least one statutory ground for termination by clear and convincing evidence. Ark.Code Ann. § 9–27–341(b)(3)(B) (Repl.2009). The purpose of terminating a parent's rights to his or her child is to provide permanency in the child's life where returning the juvenile to the family home is contrary to the child's health, safety, or welfare, and where it appears that a return to the family home cannot be accomplished in a

reasonable period of time as viewed from the juvenile's perspective. Ark.Code Ann. § 9–27–341(a)(3) (Repl.2009). We do not reverse a termination order unless the trial court's findings were clearly erroneous. *Meriweather v. Ark. Dep't of Human Servs.*, 98 Ark.App. 328, 255 S.W.3d 505 (2007).

In the present case, the trial court found termination of Ms. Hill's parental rights to be in T.H.'s best interest. The trial court considered T.H.'s adoptability and found that there would be a risk of harm if T.H. had continued contact with Ms. Hill. The trial court further found that DHS had met its burden of proof as to Arkansas Code Annotated section 9–27–341(b)(3)(B)(viii), which provides as a ground for termination that "[t]he parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life." More specifically, the trial court found that Ms. Hill had been sentenced for a substantial period of T.H.'s life given T.H.'s young age at the time of removal and her need for permanency. Ms. Hill argues that these findings were in error.

■ Ms. Hill first challenges the sufficiency of the evidence on the statutory ground found by the trial court to support termination. She asserts that three years in the context of T.H.'s entire juvenile life was not a substantial period of time and that it would not prevent her from having a meaningful relationship with her daughter. She contends that there was no evidence presented showing that she would be unable to immediately care for her child upon her release or that DHS had attempted to even determine her ability to care for her child once she was released.

We hold that three years under these facts is a substantial period of the child's life. T.H. was only two at the time she was removed from her mother's custody and placed in foster care. By the time her mother may be released from prison, the child will have spent more than half of her life in foster care. Even then, there is no guarantee that she would be immediately able to return to her mother's custody. As stated above, the purpose of terminating a parent's rights to his or her child is to provide permanency in the child's life where returning the juvenile to the family home is contrary to the child's health, safety, or welfare, and where it appears that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark.Code Ann. § 9–27–341(a)(3) (Repl. 2009). On these facts, we cannot say that the trial court clearly erred in finding that, from the child's perspective, this was not a reasonable period of time to remain without permanency.

■ Ms. Hill's last argument is that there was insufficient evidence that termination was in the child's best interest. She argues that, while there was evidence that T.H. was adoptable and had adoptive parents ready and willing to adopt her, the State cannot sever her parental rights just because it might find a better home for the child. Instead, she argues that the State was required to demonstrate some potential harm to the child if parental rights were not terminated, and that it had failed to do so.

■ Pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(A), an order terminating parental rights must be based on a finding that termination is in the child's best interest, which includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parents. The harm referred to in the termination statute is "potential" harm; the circuit court is not required to find that actual harm would result or to affir-

matively identify a potential harm. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark.App. 337, 285 S.W.3d 277 (2008). The potential-harm analysis is to be conducted in broad terms. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703.

Here, before T.H. was born, Hill pled guilty to abusing a child, which resulted in a sentence of probation. The record reveals that Ms. Hill was later the subject of a "TRUE" finding of Newborn Illegal Drug exposure, with T.H. as the victim. Thereafter, Ms. Hill failed to comply with the conditions of her probation, resulting in her incarceration for up to three years. Then, when she was incarcerated, she left T.H. with an inadequate caregiver and without any support. This resulted in DHS taking T.H. into emergency custody. By the time Ms. Hill is released, T.H. will have potentially spent over half of her life in foster care. Based on these facts, we cannot hold that the trial court's finding of "potential harm" is clearly erroneous.

Affirmed.

VAUGHT, C.J., and HOOFMAN, J., agree.