2013 Ark. App. 96

**Bradley SPENCER and Carrie Spencer, Appellants**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES, Appellee.**

**No. CA 12–801.**

Court of Appeals of Arkansas.

Feb. 13, 2013.

Janet Lawrence, for appellant Carrie Spencer.

Thomas Wilson, for appellant Bradley Spencer.

Tabitha Baertels McNulty, County Legal Operations, for appellee.

KENNETH S. HIXSON, Judge.

In this case, Bradley and Carrie Spencer separately appeal the Sebastian County Circuit Court's termination of their parental rights to their four children: three daughters, A.S., born September 23, 1999; H.S., born February 2, 2002; and T.S., born March 12, 2004; and a son, B.S., born September 10, 2006. On appeal, Bradley Spencer argues that there is insufficient evidence to support the circuit court's order. Counsel for Carrie Spencer has filed a no-merit brief pursuant to *Linker–Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004). Carrie Spencer has also belatedly filed pro se points for reversal. We affirm the termination of parental rights of both parents.

*Background and Procedural History*

This case began on February 19, 2010, when the Department of Human Services (DHS) exercised a seventy-two-hour hold and took the minor children into custody following the arrest of Bradley Spencer on drug charges. There were allegations of environmental neglect and inadequate supervision by Carrie Spencer, as well as the possibility of her arrest on the drug charges. DHS filed its petition for emergency custody on February 22, 2010. An ex parte order granting custody of the children to DHS was also entered on February 22, 2010. The court later found probable cause for entry of the emergency order.

At the adjudication hearing, the circuit court found the children to be dependent-neglected based on the arrest of Bradley Spencer on drug charges and the children being in the home at the time of the criminal activity. The court placed custody of the children with Deborah Wofford, their maternal grandmother. The parents were ordered to, among other things, obtain and maintain appropriate housing, sufficient income, and transportation; complete parenting classes; submit to random drug screens, including hair-follicle testing; submit to a psychological evaluation and complete any counseling recommended; submit to a drug-and-alcohol assessment and complete any treatment recommended; comply with the terms and conditions of any criminal sentence; and visit regularly.

A few weeks later, on June 21, 2010, DHS filed a motion for emergency change of custody on the basis that the police had found B.S. walking alone in the street in the direction of his grandmother's home. The case worker and police found that all four children were with their mother, unsupervised, despite being in the temporary legal custody of their grandmother. Later that day, the grandmother refused to disclose the location of two of the children and was arrested. The children were returned to DHS's custody after a finding that it was not in the best interest of the children to remain with their grandmother.

Over the next two years, there were several review hearings and two perma-

nency-planning hearings; the children remained with DHS. The court found that each parent had partially complied with the case plan; however, significant problems remained. Carrie Spencer continued to test positive for drugs and had not found any employment, and Bradley Spencer lacked suitable housing. The court returned custody of A.S. to Carrie Spencer on a trial basis. However, this placement failed because Carrie Spencer continued to test positive for drugs and failed to comply with the court's order that she obtain employment, despite having a college degree. The court subsequently changed the goal of the case to termination of parental rights and adoption.

DHS filed its petition seeking the termination of the parental rights of both parents on April 18, 2012. The petition alleged two grounds: that twelve months had passed and the parents had failed to remedy the cause for removal, see Ark. Code Ann. § 9–27–341(b)(3)(B)(i)(a) (Repl. 2009); and that subsequent issues had arisen since removal warranting termination. See .Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)(a).

The case proceeded to a termination hearing on June 29, 2012. The circuit court ruled from the bench and granted the petition for termination. The court found that DHS had proved one ground for termination in that the children had been adjudicated dependent-neglected; that they had remained out of the parents' custody for more than twelve months; that DHS had made meaningful efforts to provide rehabilitative services; and that, despite those efforts, the conditions that caused removal had not been remedied. The court also found that the children were adoptable and that termination of parental rights was in their best interest.

The court addressed each parent's situation separately. First, the court found that while Bradley Spencer had partially complied with the case plan, he did not want counseling. The court noted that he had only been in his apartment for approximately one month, and that the two-bedroom apartment had no bedding for his children. The court noted that Bradley Spencer's priorities were misplaced because he moved his girlfriend and her child into the apartment, instead of obtaining a suitable home for his own children.

As for Carrie Spencer, the court noted her lack of credibility. The court found that she had stable housing, albeit paid for by her family. She had also completed residential drug treatment, completed a psychological evaluation, visited on a regular basis, and had her own transportation. The court further noted that Carrie Spencer had only recently obtained employment and had been living off the support of family members. The court found that she had not been able to overcome her drug addiction, including testing positive within the past week. The court also found that the children would be at risk of harm, both psychologically and physically, if returned to either parent. This appeal followed.

### Standard of Review

We review termination-of-parental-rights cases de novo. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark.App. 328, 255 S.W.3d 505 (2007). In cases where the issue is one of termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *Trout v. Ark. Dep't of Human Servs.*, 359 Ark. 283, 197 S.W.3d 486 (2004). Termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Id.* Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well being of the

child and must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children. *Camarillo–Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). Pursuant to Arkansas Code Annotated section 9–27–341(b)(3), an order terminating parental rights must be based upon clear and convincing evidence, i.e., proof that will produce in the fact-finder a firm conviction as to the verity of the allegation sought to be established. *Camarillo–Cox, supra.* We do not reverse a termination order unless the circuit court's findings are clearly erroneous. *Id.* A finding is clearly erroneous when the appellate court is, on the entire evidence, left with a definite and firm conviction that a mistake has been made. *Id.* In deciding whether a finding is clearly erroneous, we give great deference to the superior opportunity of the circuit court to observe the parties and judge the credibility of witnesses. *Id.*

### Bradley Spencer's Appeal

■ The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). The first step requires proof of one or more of the statutory grounds for termination. Ark.Code Ann. § 9–27–341(b)(3)(B). Spencer does not challenge the circuit court's findings that DHS proved grounds for termination.

■ The second step requires consideration of whether the termination of parental rights is in the children's best interest. Ark.Code Ann. § 927341(b)(3)(A). This includes consideration of the likelihood that the children will be adopted and the potential harm caused by returning custody of the children to the parent. The court,

however, does not have to determine that every factor considered be established by clear and convincing evidence. Instead, after considering all the factors, the evidence must be clear and convincing that the termination is in the best interest of the child. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918; *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark.App. 323, 210 S.W.3d 143 (2005).

■ In his appeal, Bradley Spencer argues that there was insufficient evidence to support the circuit court's order terminating his parental rights. For the first part of his argument, Spencer asserts that the circuit court did not properly consider whether DHS had an appropriate permanency plan for the children because the children were placed in three different foster homes. While Robbie McKay, the DHS case worker, testified that the children were placed in three different foster homes, she also testified that they were adoptable and that DHS was looking for parents wanting to adopt the children as a sibling group. McKay did not anticipate any problems finding an adoptive home for these children. This indicated that DHS had a proper permanency plan for the children. *See M.T. v. Ark. Dep't of Human Servs.*, 58 Ark.App. 302, 952 S.W.2d 177 (1997).

■ Spencer next argues that the circuit court failed to give special weight to the progress he made during the pendency of this case. It is true that Spencer had made some progress and partially complied with the case plan in that he had resolved his criminal charges, obtained employment and transportation, and tested negative on his drug screens. However, even completion of a case plan is not determinative; what matters is whether completion of the case plan achieved the intended result of making the parent capable of

caring for his child. *See Wright v. Ark. Dep't of Human Servs.*, 83 Ark.App. 1, 7, 115 S.W.3d 332, 335 (2003). Here, the circuit court found that Spencer had failed to maintain stable housing and had only recently moved into a two-bedroom apartment with his girlfriend and her child. He also lacked sufficient bedding for his own children. Spencer could not tell the case worker where his children would sleep if they were returned to his custody. A stable home is one of a child's most basic needs, *Latham v. Ark. Dep't of Health & Human Servs.*, 99 Ark.App. 25, 256 S.W.3d 543 (2007), and the failure to secure safe and appropriate housing of one's own is contrary to the child's well-being and best interest. *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark.App. 255, 148 S.W.3d 780 (2004). The court also found that Spencer had not completed the counseling sessions as ordered. The failure to consistently attend counseling sessions to address the issues resulting in the children's removal is a factor that shows indifference and will support termination of a parent's rights. *See Jefferson v. Ark. Dep't of Human Servs.*, 356 Ark. 647, 158 S.W.3d 129 (2004).

Spencer also argues that the circuit court erred in failing to protect his rights in some unspecified manner. We have said that

[t]he rights of parents are not proprietary and are subject to their related duty to care for and protect the child and the law secures their preferential rights only so long as they discharge their obligations. *Watkins v. Dudgeon*, 270 Ark. 516, 606 S.W.2d 78 (Ark.App. 1980); *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979); *Kirk v. Jones*, [178 Ark. 583, 12 S.W.2d 879 (1928) ]; *State v. Grisby*, [38 Ark. 406 (1882) ].The unfitness for which this preferential right to custody may be forfeited can result from a parental failure to dis-

charge any of the correlated duties of parenthood. In *Grisby* it was stated that this preference for natural parents is based on a presumption that they will take care of their children, bring them up properly and treat them with kindness and affection, and when that presumption has been dissipated chancery will interfere and place the child where those parental duties will be discharged by another.

*Jones v.Jones*, 13 Ark.App. 102, 108, 680 S.W.2d 118, 121 (1984). Moreover, the intent of the juvenile code is to provide permanency in a juvenile's life and the evidence must be viewed from the juvenile's perspective. *See* Ark.Code Ann. § 9–27–341(a)(3). Robbie McKay testified that two of the children, A.S. and B.S., were in counseling, in part, dealing with the children's need for permanency because the case had lasted for over two years.

We cannot say that the circuit court was clearly erroneous in finding that termination of Bradley Spencer's parental rights was in the children's best interest.

### *Carrie Spencer's Appeal*

▇▇▇ As mentioned at the beginning, counsel for Carrie Spencer filed a no-merit brief pursuant to *Linker–Flores, supra. Linker–Flores* and its progeny require a review of the sufficiency of the evidence, as well as a discussion of any other rulings made at trial that were adverse to Carrie Spencer. Counsel has complied with the procedure set out in *Linker–Flores.*

▇▇▇ It is undisputed that the children had been adjudicated dependent-neglected and remained out of the parents' custody for more than twelve months and, despite meaningful efforts by DHS to provide rehabilitative services, the conditions that caused removal had not been remedied.

*See* Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(a). Only one ground is necessary to terminate parental rights. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). The fact that A.S. was placed in her mother's custody for a period of time does not represent a barrier to termination. It is not necessary that the twelve-month period immediately precede the filing of the petition for termination of parental rights, or that it be for twelve consecutive months. Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(b). Therefore, DHS proved at least one ground for termination.

In addition to the discussion of the children's adoptability and their need for permanency in the best-interest-analysis portion of Bradley Spencer's appeal, Carrie Spencer admitted that she lied to the court and to DHS concerning her drug usage. She also admitted to falsifying a drug screen. She tested positive on six of thirteen drug tests, including one the day before the termination hearing. A parent's continuing drug use shows an indifference to remedying the problem plaguing the family and is not in the best interest of the children. *Carroll, supra.*

There was also testimony concerning Spencer's failure to secure employment until April 30, 2012. The case worker expressed skepticism that Spencer would keep the job for very long. The circuit court noted that, despite being ordered to obtain employment, Spencer had relied on others for her support and did not obtain employment until shortly before the termination hearing. A parent's failure to secure stable employment and her indifference to remedying the situation are contrary to the children's health, safety, and well-being and support termination of her parental rights. *Trout v. Ark. Dep't of Human Servs.*, 359 Ark. 283, 197 S.W.3d 486 (2004); *Carroll, supra.*

Carrie Spencer submitted pro se points more than a week after they were due. However, these points do not warrant reversal. Spencer disputes the underlying basis for DHS removing the children in the first place and relies on an administrative proceeding where an administrative law judge determined that Spencer's name not be added to the child-maltreatment registry. Spencer testified, however, that at the time the children were removed, both she and her husband were using methamphetamines. She also admitted that there were firearms in the household, as alleged in the original probable-cause affidavit. This provides no basis for reversal of the termination order.

Spencer next raises questions concerning whether the children are adoptable. She notes that the children are older, ages thirteen, ten, eight, and six. She also states that the eldest child, A.S., has medical conditions (heart-related and kidney-related) that may make it more difficult for her to be adopted. Robbie McKay briefly noted that some of the children had unspecified medical issues, but she did not see that as being a barrier to adoption. Spencer also notes that it is harder finding adoptive homes for four children as a unit. Spencer further suggests that her mother has been willing for all of the children to be placed in her home, either on a temporary or permanent basis. However, this is the same grandmother that allowed Spencer to have all four children together, during which time one of the children wandered away from home. The circuit court was only required to *consider* whether the children are adoptable as part of its best-interest analysis. *Reid, supra.* Moreover, the information Spencer notes in her points concerning the children was before the circuit court. We, therefore, grant counsel's motion to withdraw and affirm

the circuit court's termination order as to Carrie Spencer.

Affirmed; motion to withdraw granted.

WOOD and BROWN, JJ., agree.