

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-1129

DAKOTA CARUTHERS

APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN
SERVICES AND MINOR CHILD

APPELLEES

Opinion Delivered: April 12, 2017

APPEAL FROM THE GREENE
COUNTY CIRCUIT COURT
[NO. 28JV-15-94]

HONORABLE BARBARA HALSEY,
JUDGE

AFFIRMED

## MIKE MURPHY, Judge

Dakota Caruthers appeals the April 4, 2016 order terminating his parental rights to

E.C. He argues the lower court erred in (1) denying his motion to dismiss and (2) finding

termination was in E.C.'s best interest.[1] We affirm.

### I. *Facts*

The Arkansas Department of Human Services (DHS) exercised emergency control

over then three-month-old E.C. on May 18, 2015, upon notice that the child's parents had

been incarcerated in Missouri on shoplifting charges. A little over a month later, E.C. was

adjudicated dependent-neglected for inadequate supervision, because he lacked an

appropriate caregiver. The case progressed through two review hearings. Caruthers did not

---

[1] E.C.'s mother's parental rights were also terminated as part of the order, but she is
not a party to this appeal.

appear for either of the hearings. The court found at both hearings that Caruthers was partially compliant with the case plan, but he had never completed the drug-and-alcohol assessment ordered. The court continued both hearings with the goal of reunification.

DHS filed its petition to terminate parental rights on April 4, 2016, alleging the grounds of failure to remedy, failure to provide material support, subsequent factors, and aggravated circumstances. The goal of the case was changed to adoption, and the termination hearing was set for August 4, 2016. Multiple motions to continue ensued, and each one was accompanied by a written order of the court articulating good cause as to why the hearing should be moved. The hearing was eventually held on September 9, 2016, 157 days after the filing of the petition.

At the hearing, Holly Johnson, the DHS caseworker, testified that her main concern with Caruthers was his lack of stable housing. She testified that, while Caruthers did have housing throughout the case, he had moved all over town during that time, DHS had sometimes been unable to find him, and DHS had never been able to visit the home, despite multiple attempts. She also expressed concerns that he had changed jobs multiple times during the pendency of the case.

Caruthers testified that, if the court allowed, he could take E.C. home with him that day—he had diapers, wipes, baby food, formula, and a crib—but he also acknowledged that he did not have stable housing. He explained that he made more money at each subsequent job he took.

Caruthers admitted that he did not have his own place—he was living with a friend in an apartment—and that he did "have some trouble just kind of getting through life,

maintaining a stable place, stable job, and making contact with the probation officers." He testified that he had been incarcerated on two more occasions while the case was ongoing.

The court also heard testimony from an adoption specialist.

The court terminated Caruthers's parental rights, finding that doing so was in E.C.'s best interest. The court noted that, while incarceration was the initial reason for removal, after the removal the family was unable to establish stable housing. In its written order, the court specifically found that

> [t]he parents have not demonstrated to the Court that they can provide a safe stable home for the juvenile. The parents have not maintained consistent contact with [DHS], maintained stable employment, or demonstrated that they can provide a safe stable home for the juvenile. The father testified that he had been incarcerated three times since the juvenile came into Department custody. He further testified that he now makes $700 a week but that he has not had enough money to establish a safe stable home for the juvenile.

## II. *Standard of Review*

We review termination-of-parental-rights cases de novo. *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, at 4–5, 456 S.W.3d 383, 386. It is DHS's burden to prove by clear and convincing evidence that it is in a child's best interest to terminate parental rights as well as the existence of at least one statutory ground for termination. *Id.* On appeal, the inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* We give a high degree of deference to the circuit court, because it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Id.*

### III.  *Motion to Dismiss*

Caruthers first argues that the trial court erred in denying his motion to dismiss the termination‑of‑parental‑rights petition, because it was not heard within ninety days of the date it was filed. *See* Ark. Code Ann. § 9‑27‑341(d) (Repl. 2015) ("The court shall conduct and complete a termination of parental rights hearing within ninety (90) days from the date the petition for termination of parental rights is filed unless continued for good cause as articulated in the written order of the court."). The trial court denied the motion because counsel had agreed to the dates of the hearings, good cause was demonstrated for each one, and there was no objection when the hearings were set. Our standard of review for the denial of a motion to dismiss is whether the trial court abused its discretion. *Newman v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 207, at 8, 489 S.W.3d 186, 192.

 On appeal, Caruthers argues that "the trial court originally scheduled the termination hearing for August 4, 2016, which was beyond the ninety‑day time limit," and that "[t]here was no 'good cause' set forth explaining why the originally scheduled hearing was set for four months from the date the Department filed its petition." A careful review of the record, however, demonstrates that is not the case.

The petition to terminate originally stated a termination hearing was to be held on May 31, 2016. An "Order of Continuance" was entered on April 14, 2016 "by agreement of the parties" and "due to a lack of time to hear the docket" resetting a "permanency planning and termination hearing" for May 26, 2016. On May 26, 2016, another "Order of Continuance" was entered "by agreement of the parties" resetting the case for August 4, 2016. In that written order, the court found that good cause was shown because Caruthers's

SLIP OPINION

attorney was new to the case and needed adequate time to prepare. The hearing was continued twice more from that August 4, 2016 date, and only one of those was reduced to a written order, but Caruthers's initial point that the original hearing was set outside the 90-day limit without good cause is not well taken.

Even if the court did not articulate good cause, Caruthers's argument fails because, while the applicable statute does provide that a hearing "shall" be held within ninety days, a trial court does not lose jurisdiction in this instance. The argument that it does was expressly addressed and rejected in *Hill v. Arkansas Department of Human Services*, 2012 Ark. App. 108, 389 S.W.3d 72. There, we held that, while the applicable statute spoke in mandatory terms, a loss of jurisdiction did not follow because the General Assembly did not provide a sanction for an untimely filing and because there was no evidence that such a result was intended. *Id.* at 5, 389 S.W.3d at 75.

Furthermore, reversal is not appropriate in the absence of a showing of prejudice resulting from the delay. *Id.* Nowhere in Caruthers's argument does he discuss how he was harmed in any way by the delay, especially considering one of the continuances was so that his own attorney could be better prepared for the trial. The trial court did not abuse its discretion in denying Caruthers's motion to dismiss.

IV. *Best Interest*

The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The other step requires consideration of whether the termination

of parental rights is in the children's best interest. Ark. Code Ann. § 9–27–341(b)(3)(A). The best-interest determination must consider the likelihood that the children will be adopted and the potential harm caused by returning custody of the children to the parent. *Spencer v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 96, at 5–6, 426 S.W.3d 494, 498. The court, however, does not have to determine that every factor considered be established by clear and convincing evidence. *Id.* Instead, after considering all the factors, the evidence must be clear and convincing that the termination is in the best interest of the child. *Id.*

Caruthers argues that there was insufficient evidence to demonstrate a risk of potential harm to E.C. to support the trial court's best-interest finding. He does not argue the grounds or the child's adoptability and therefore waives those issues on appeal.

This court and our supreme court have stated, time and again, that a failure to provide appropriate housing is contrary to the best interest of children. *See, e.g., Selsor v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 182, __S.W.3d__ (collecting cases). A stable home is one of a child's most basic needs, and that cannot be ignored. *See id.*

The determination of potential harm is forward-looking by its very nature. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, at 13, 314 S.W.3d 722, 728–29. Caruthers admitted his housing was "not stable right now" and that "I do think that maybe I have some trouble just kind of getting through life, maintaining a stable place, stable job, and making contact with probation officers." Caruthers was put in jail on three separate occasions during the pendency of the case. The trial court did not err in looking at Caruthers's past instability and concluding that there was nothing to demonstrate that he would be able to acquire or maintain safe, stable housing in the future.

Furthermore, the intent of the juvenile code is to provide permanency in a juvenile's life, and the evidence must be viewed from the juvenile's perspective. Ark. Code Ann. § 9-27-341(a)(3). At the time of the termination hearing, E.C. had been in foster care for approximately sixteen of his eighteen months of life.

We certainly realize that termination of parental rights is an extreme remedy and is in derogation of the natural rights of the parents. *Linker-Flores v. Ark. Dep't of Human Servs.*, 359 Ark. 131, 137, 194 S.W.3d 739, 744 (2004). However, parental rights should not be allowed to continue to the detriment of the child's welfare and best interest. *Id*. Here, the evidence demonstrated that returning E.C. to the custody of his father was not in the child's best interest.

Affirmed.

GLADWIN and HARRISON, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor child.