

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-17-524

ASHLEY GARNER (CONRAD)[1]
APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD
APPELLEES

Opinion Delivered: October 25, 2017

APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT
[NO. 26JV-16-25]

HONORABLE LYNN WILLIAMS, JUDGE

AFFIRMED

## MIKE MURPHY, Judge

Appellant Ashley Garner (Conrad)[1] appeals the March 22, 2017 order of the Garland County Circuit Court terminating her parental rights to her minor child, C.L. She argues that the circuit court erred in granting the termination-of-parental-rights petition because appellee Arkansas Department of Human Services (DHS) failed to present sufficient evidence of the grounds for termination and that termination was in C.L.'s best interest.[2] We affirm.

---

[1]Garner recently changed her last name to "Conrad" and signed the notice of appeal as "Conrad," but because she was referred to as "Garner" throughout the case, we will continue to refer to her as "Garner" here.

[2]The parental rights of C.L.'s father were also terminated as part of the order, but he does not appeal.

SLIP OPINION

On January 21, 2016, DHS filed a petition for emergency custody and dependency-neglect, alleging that Garner's only child, C.L. (DOB 08/23/2012), was dependent-neglected as a result of "neglect and parental unfitness, specifically parental drug use, refusing access to the child, inadequate shelter and medical neglect." The affidavit attached to the petition alleged that on January 17, 2016, police responded to a call about Garner, who allegedly had been distributing methamphetamines with her child present. The affidavit also noted Garner's history with DHS; she had previously maltreated C.L., which resulted in a dependency-neglect case that opened in April 2014 and closed in September 2015. An emergency order was entered on January 21, 2016.

On March 23, 2016, the circuit court adjudicated C.L. dependent-neglected based on clear and convincing evidence that C.L. was subjected to inadequate supervision due to Garner's illegal drug use and environmental neglect. Garner was ordered to comply with the case plan; view "The Clock is Ticking" video; cooperate and maintain contact with DHS; demonstrate improved parenting; submit to random drug screens; remain clean and sober; complete parenting classes; participate in individual counseling; obtain and maintain stable employment and housing; submit to a psychological evaluation and a drug-and-alcohol assessment and follow all recommendations; and attend AA/NA meetings a minimum of three times a week and provide proof of attendance to DHS.

A review hearing was held on July 6, 2016. The order provided that returning custody of C.L. to Garner remained contrary to the child's welfare; DHS had made reasonable efforts to provide family services; Garner had minimally complied with the case plan; and visitation should remain supervised.

SLIP OPINION

After two continuances at Garner's request, the court conducted a permanency-planning hearing on January 11, 2017. The order provided that despite DHS's efforts, Garner had only partially complied with her case plan and had not corrected her drug addiction. The order noted that Garner had not remained clean and sober; had not submitted to counseling; had not followed all the recommendations based on her drug-and-alcohol assessment or psychological evaluation; and she had not submitted to inpatient-drug treatment. The court found that "the mother's unwillingness to go to treatment demonstrates that she places her own self and desires ahead of her daughter's."

On February 8, 2017, DHS filed a petition for termination of Garner's parental rights to C.L. After the termination hearing, the circuit court entered its order on March 22, 2017, terminating Garner's parental rights. At the hearing, testimony revealed that while Garner did maintain stable housing and employment and attend all the hearings and weekly visitation almost regularly, she did not remain clean and sober; provide proof of attending AA or NA as instructed; attend an inpatient-treatment program; complete the hands-on parenting-instruction course; submit to individual counseling; or provide proof that she had watched "The Clock is Ticking" video. Throughout the case, Garner did stay in regular contact with her caseworker and did submit to a psychological evaluation, but she did not follow through with the recommendations.

Testimony further established that Garner had not sufficiently addressed her substance-abuse issue. She was drug free approximately four months, but the psychological evaluation recommended that she have six months of sobriety and six months of stability on psychiatric medication.

SLIP OPINION

The court found that DHS had proved by clear and convincing evidence that termination was in C.L.'s best interest and was supported by the failure-to-remedy and subsequent-factors grounds. At the close of the hearing, the court orally found,

> The last four months [Ashley] has been drug free and I applaud [her] on that. However, I disagree that she's dealing with her drug problem. . . . The disease is not being treated and that is a real concern that I have. . . . [C.L.] can't afford another relapse, not Ashley can't afford another relapse. . . . Ashley has had plenty of time—two different proceedings, two different cases—to prove to this court that she is going to be stable for this child's life and take care of her properly and it just hasn't happened.

This timely appeal followed.

We review termination-of-parental-rights cases de novo. *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, at 4–5, 456 S.W.3d 383, 386. It is DHS's burden to prove by clear and convincing evidence that it is in a child's best interest to terminate parental rights as well as the existence of at least one statutory ground for termination. *Id.* On appeal, the inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* We give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Id.*

The termination-of-parental-rights analysis is twofold; it requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. The first step requires proof of one or more of the nine enumerated statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B) (Repl. 2015). The best-interest determination must

consider the likelihood that the children will be adopted and the potential harm caused by returning custody of the children to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). The court, however, does not have to determine that every factor considered be established by clear and convincing evidence. *Spencer v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 96, at 5–6, 426 S.W.3d 494, 498. Instead, after considering all the factors, the evidence must be clear and convincing that the termination is in the best interest of the child. *Id.*

On appeal, Garner first argues that the circuit court's best-interest finding must be reversed. In determining the best interest of the child, the circuit court should consider factors such as the likelihood of adoption and the potential harm to the health and safety of a child if subjected to continuing contact with the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i), (ii). Parental rights will not be enforced to the detriment of the health and well-being of the child. *Christian-Holderfield v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 534, at 7–8, 378 S.W.3d 916, 920. The court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Jones v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 125, at 11–12, 515 S.W.3d 151, 158. Furthermore, the supreme court has directed that the potential-harm analysis be conducted in broad terms. *Id.*

Garner does not challenge the circuit court's adoptability finding. She does, however, challenge the circuit court's potential-harm finding. Garner admits to only partial compliance with the case plan, but she argues that she has made sufficient progress to warrant additional time. She asserts that a child's need for permanency should not obliterate the ability of a family to reunify where a parent has never physically abused or harmed her child,

has attempted to comply, and has finally been able to obtain four months of sobriety. We disagree.

This is Garner's second attempt at maintaining sobriety, as C.L. had previously been adjudicated dependent-neglected because of Garner's drug use. After C.L. had been returned to her custody in that case, she was again removed just six months later because of Garner's continued drug use. Throughout this case, Garner continually violated court orders by not complying with the case plan, she was still subject to supervised visitation, and she continued to abuse drugs ten months into this case. We have held that past behavior is correctly viewed as a predictor of potential harm that may likely result if a child is returned to the parent's custody. *Jones*, 2017 Ark. App. 125, at 12, 515 S.W.3d at 158. Moreover, living in continued uncertainty is, in itself, potentially harmful to children. *Id*. Testimony revealed that C.L. had been in foster care more than half her life.

As noted above, potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *McNeer v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 512, __ S.W.3d __. We therefore conclude that there was ample evidence before the circuit court to support it's finding on the potential-harm factor. *Id*.

Garner next argues that the circuit court clearly erred in finding that DHS proved grounds to support the termination decision. Specifically, she asserts that it was undisputed that she and her child are bonded, that she had achieved sobriety, and that DHS had failed to offer services to address any environmental issue.

The failure-to-remedy ground found at section 9–27–341(b)(3)(B)(i)*(a)* allows for termination of parental rights if the child has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve months, and despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. *Jones*, 2017 Ark. App. 125, at 7, 515 S.W.3d at 156. Garner does not dispute that C.L. was adjudicated dependent-neglected or that C.L. was out of her custody for more than twelve months, so we need only discuss the causes for removal.

C.L. was removed from Garner's custody due to Garner's drug use—she tested positive for methamphetamines, ecstasy, and oxycodone—and due to environmental concerns within Garner's home, such as exposed wiring, broken windows covered with cardboard, and plastic covering the top of the camper the family lived in. Garner first argues that there was no evidence that she continued to use drugs as she had been sober for multiple months and that, while she did not complete the required drug treatment, she had drug treatment in a prior case.[3] We disagree.

In *Schaible v. Arkansas Department of Human Services*, we affirmed the termination of a mother's parental rights even though she remained "clean" for the entire seventeen-month period the case was open. 2014 Ark. App. 541, at 10, 444 S.W.3d 366, 372. While the court did find the mother to be in substantial compliance and commended her for remaining drug free, it did not find that she was in full compliance with the case plan. *Id.* The court

---

[3]Garner notes that the allegation that she was selling drugs in her home was never established as true and thus not a cause of the removal. However, she tested positive for drugs at the time of removal, which is a cause for purposes of this analysis.

noted it had great concern that she was not attending the required NA/AA meetings and that she had not completed a drug-treatment program. *Id.*

Similarly, Garner's efforts do not make the court's termination decision erroneous. Cindy Stroud, the DHS county supervisor, testified at the termination hearing that ten months into the case Garner was still testing positive for methamphetamine. DHS continued to offer services to Garner; yet it was not until the last few months of the case that Garner began to somewhat comply with the case plan and achieve sobriety. The circuit court applauded Garner's efforts in remaining drug free for four months, but it found that Garner was not actually dealing with her drug problem, as evidenced by the fact that she refused to seek treatment and had failed to follow the case plan. The circuit court explained that Garner has a drug addiction and she has not been treated for that disease.

Ample evidence exists to support the trial court's conclusion that Garner failed to remedy the situation that led to the removal of her child. Because proof of only one statutory ground is sufficient to terminate parental rights, no further discussion is necessary. *Jung v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 523, at 6–7, 443 S.W.3d 555, 559.

Affirmed.

GRUBER, C.J., and HIXSON, J., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.