MIKE MURPHY, Judge
Appellant Derrick Hunter appeals from the March 28, 2018 order of the Columbia County Circuit Court terminating his parental rights to his son, J.H. Hunter argues that he was denied due process because (1) he was not provided assistance of counsel until the termination hearing and (2) sufficient evidence did not support the termination. We affirm.
On August 19, 2016, the Arkansas Department of Human Services (DHS) exercised an emergency seventy-two-hour hold on newborn J.H. when both J.H. and his mother, Jessica Otwell, tested positive for amphetamines at the time of J.H.'s birth.[1] At the time of removal, Hunter was identified as J.H.'s putative father. He tested negative for drugs at the time, but he admitted using marijuana in the past. It was also discovered that Hunter is a level-three sex offender. In addition, DHS's records revealed that Hunter has a long history with DHS dating back to 2001 when a true finding was made against him for sexual penetration and exploitation of a juvenile. In addition, he had been implicated in five reports to the hotline resulting in two additional true findings for sexual and physical abuse, both against his children from other marriages.
A petition for emergency custody was filed on August 25, 2016, and an ex parte order for emergency custody was signed that same day. A probable-cause hearing was conducted on September 2, 2016, and the order entered found that the emergency conditions that necessitated removal of J.H. from his mother's custody continued to exist. Hunter was present at the hearing and was ordered to submit to a DNA test to determine paternity as to J.H.
On October 7, 2016, Hunter attended the adjudication hearing, and the circuit court found J.H. dependent-neglected. In addition, it was established that Hunter did not have significant contacts with J.H., and putative-parent rights had not attached. The circuit court reiterated its order for Hunter to submit to DNA testing.
A review hearing was held on January 6, 2017, and DNA test results were entered into evidence showing that there was 99.99 percent probability that Hunter is J.H.'s biological father. The circuit court ordered Hunter to "participate in the services outlined *886 in the case plan, including random drug testing, and ... submit to a hair follicle drug screen." Additionally, the circuit court found that Hunter had completed parenting classes and submitted to a psychological evaluation, but he had tested positive for illegal substances.
Another review hearing was held on February 17, 2017, and the circuit court found that Hunter was complying with the case plan and court orders and that he had been testing negative for illegal substances. On March 6, 2017, an amended review order was filed pertaining to the review hearing held on January 6, 2017. The order was amended to reflect the addition of Hunter as a defendant and to add language adjudicating Hunter the legal father of J.H.
On April 21, 2017, a third review hearing was held. The circuit court found that Hunter was complying with the case plan and ordered him to submit to a psychosexual evaluation. A fourth review hearing was held June 23, 2017, and the circuit court found that Hunter had "violated the Court's previous order restricting [his] visitation to supervised visits only."
On October 17, 2017, DHS filed a petition for termination of Hunter's parental rights based on three grounds: "failure to remedy," Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Supp. 2017); "subsequent factors," Ark. Code Ann. § 9-27-341(b)(3)(B)(vii) ; and "aggravated circumstances," Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3) . On December 1, 2017, the circuit court held a permanency-planning hearing and found that Hunter had not made significant, measurable progress.
The circuit court held the termination-of-parental-rights hearing on January 19, 2018. After finding that Hunter was indigent and had requested counsel, the court appointed counsel to represent him at the termination hearing. The circuit court terminated Hunter's parental rights based on the aggravated-circumstances ground. Moreover, the circuit court found that it was in J.H.'s best interest to terminate Hunter's parental rights. This timely appeal follows.
We review termination-of-parental-rights cases de novo. Dinkins v. Ark. Dep't of Human Servs. , 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 ; M.T. v. Ark. Dep't of Human Servs. , 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. Anderson v. Douglas , 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. J.T. v. Ark. Dep't of Human Servs. , 329 Ark. 243, 947 S.W.2d 761 (1997). Credibility determinations are left to the fact-finder. McKinney v. Ark. Dep't of Human Servs. , 2018 Ark. App. 325, at 3-4, 551 S.W.3d 412, 415.
In this appeal, Hunter first argues that he was denied due process because he was not appointed counsel until the termination-of-parental-rights hearing. However, Hunter failed to raise any due-process argument to the circuit court and we have held that that we will not consider issues raised for the first time on appeal, even constitutional ones. Maxwell v. Ark. Dep't of Human Servs. , 90 Ark. App. 223, 205 S.W.3d 801 (2005). Still, Hunter argues that this shortcoming qualifies as the third exception to the contemporaneous-objection *887 requirement set forth in Wicks v. State , 270 Ark. 781, 606 S.W.2d 366 (1980). The third Wicks exception bestows a duty on the circuit court to intervene, even without an objection, to correct a serious error. Weathers v. Ark. Dep't of Human Servs. , 2014 Ark. App. 142, at 10, 433 S.W.3d 271, 277. We are not convinced.
A Wicks exception will not apply absent a flagrant error so egregious that the circuit court should have acted on its own initiative. Id. Admittedly, Hunter was not represented by counsel until the termination hearing. However, the circuit court did not commit error in this regard. Under the juvenile code, Hunter had a right to be represented by counsel at all stages of the proceedings. Ark. Code Ann. § 9-27-316(h)(1)(A). However, the court has a statutory duty to appoint counsel for parents in dependency-neglect proceedings only if (1) the parent from whom custody was removed is (2) indigent and (3) counsel is requested by the parent or custodian. Ark. Code Ann. § 9-27-316(h)(1)(B) ; see also Sills v. Ark. Dep't of Human Servs. , 2018 Ark. App. 9, at 13-14, 538 S.W.3d 249, 257 ; Chaffin v. Ark. Dep't of Human Servs. , 2015 Ark. App. 522, 471 S.W.3d 251. Here, Hunter concedes he was not a parent "from whom custody was removed," because he was not adjudicated a parent until January 6, 2017. The record reflects that the circuit court never denied any request by Hunter for counsel and appointed him counsel as soon as the proper findings were made regarding paternity, indigency, and a request for counsel. Moreover, there is authority for the proposition that any "failure" to appoint counsel at early stages of the dependency-neglect process is harmless if the parent has an attorney before the termination hearing. See id. ; Jefferson v. Ark. Dep't of Human Servs. , 356 Ark. 647, 158 S.W.3d 129 (2004) ; Briscoe v. State , 323 Ark. 4, 912 S.W.2d 425 (1996). Thus, the circuit court did not act in a manner that so flagrantly prejudiced Hunter as to justify our application of the third Wicks exception.
Next, Hunter challenges both the ground for termination and the best-interest finding. The termination-of-parental-rights analysis is twofold; it requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. The first step requires proof of one or more of the nine enumerated statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The best-interest determination must consider the likelihood that the child will be adopted and the potential harm caused by returning custody of the children to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). The court, however, does not have to determine that every factor considered be established by clear and convincing evidence. Spencer v. Ark. Dep't of Human Servs. , 2013 Ark. App. 96, at 5-6, 426 S.W.3d 494, 498. Instead, after considering all the factors, the evidence must be clear and convincing that the termination is in the best interest of the child. Id.
Hunter asserts that insufficient evidence supported the circuit court's reliance on the statutory ground of "aggravated circumstances" to terminate his parental rights. The aggravated-circumstances ground requires proof that there is little likelihood services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3) . There must be more than a mere prediction or expectation on the part of the circuit court that reunification services will not result in successful reunification. McLemore v. Ark. Dep't of Human Servs. , 2018 Ark. App. 57, at 12, 540 S.W.3d 730, 737.
Here, the record at the termination hearing reflects there was ample *888 evidence to support more than a "mere prediction" that reunification services would not result in successful reunification under the "aggravated-circumstances" ground. At the time of the termination hearing, Hunter, a level-three sex offender, was incarcerated awaiting trial for delivery of a controlled substance. He had a long history with DHS, including two true findings of sexual misconduct and a true finding of physical abuse. He has had a history of substance abuse and failure to follow court orders. Lastly, he lacked credibility as evidenced by the fact that he lied to the circuit court about a drug test in which he first claimed he used his cousin's urine and he would not disclose his cousin's name but then later claimed the urine as his own. Based on these circumstances, the circuit court did not clearly err in finding there was little likelihood that services would result in reunification.
Next, in determining the best interest of the child, the circuit court should consider factors such as the likelihood of adoption and the potential harm to the health and safety of a child if subjected to continuing contact with the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i), (ii). Parental rights will not be enforced to the detriment of the health and well-being of the child. Christian-Holderfield v. Ark. Dep't of Human Servs. , 2011 Ark. App. 534, at 7-8, 378 S.W.3d 916, 920. The court is not required to find that actual harm would result or to affirmatively identify a potential harm. Jones v. Ark. Dep't of Human Servs. , 2017 Ark. App. 125, at 11-12, 515 S.W.3d 151, 158. Furthermore, the supreme court has directed that the potential-harm analysis be conducted in broad terms. Id.
Hunter challenges the circuit court's best-interest finding but does not specifically contest either the adoptability prong or the potential-harm prong of the best-interest analysis. Rather, he argues that he made measurable progress toward remedying the situation and that he is being punished for a conviction that occurred when he was a teenager. However, when an appellant fails to make a specific argument in his or her brief regarding the factors outlined in the termination statute, this court will consider any argument pertaining to those factors abandoned on appeal. See Thomas v. Ark. Dep't of Human Servs. , 2018 Ark. App. 355, at 9-10, 553 S.W.3d 175, 179-80 ; Benedict v. Ark. Dep't of Human Servs. , 96 Ark. App. 395, 409, 242 S.W.3d 305, 316 (2006). We therefore affirm on this point as well.
Affirmed.
Abramson and Gladwin, JJ., agree.

Otwell's one-year-old son C.O. was also removed from her custody, but neither C.O. nor Jessica is a party to this appeal.