2011 Ark. App. 536

Earnest McGAUGHEY, Appellant

v.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES,
Appellee.

No. CA 11–225.

Court of Appeals of Arkansas.

Sept. 14, 2011.

Rachel Ann Runnels, Berryville, for Appellant.

Tabitha Baertels McNulty, Little Rock, for Appellee.

Melissa Bristow Richardson, Jonesboro, for Appellee.

DOUG MARTIN, Judge.

Appellant Earnest McGaughey appeals from the August 27, 2010 order terminating his parental rights to his daughter, M.M. We affirm.

M.M. was born on December 21, 2009. On December 28, 2009, appellee Arkansas Department of Human Services (DHS) was alerted to M.M., a "Garrett's Law baby," because the child was born with marijuana in her bloodstream. M.M.'s mother, Golden McGaughey, also tested positive for marijuana at the time of M.M.'s birth.[1] DHS caseworkers went to the McGaughey residence, where they found that the home "had only a couch and a chair, reeked of urine, had very little heat in the rear of the house, and had no hot water." The "baby's room" was an empty room filled with black trash bags, and Golden told the caseworkers that she did not have a crib, diapers, clothes, or any other necessities for the baby.

As a result, DHS filed an ex parte petition for emergency custody and dependency-neglect on December 31, 2009. The Carroll County Circuit Court entered an order for emergency custody on January 6, 2010, noting that there was probable cause to believe that the child was dependent-neglected and that it was contrary to the child's welfare to remain with the present custodian. The court's order set a probable-cause hearing for January 11, 2010.

Following the probable-cause hearing, the circuit court entered an order on January 28, 2010, finding that DHS's first contact arose during an emergency and further finding that there was probable cause that the emergency conditions that necessitated removal of the juvenile from the custody of Golden and Earnest McGaughey continued. At the conclusion of the order, the court set an adjudication hearing for March 18, 2010. After the March 18 hearing, the court entered an order in which it adjudicated M.M. dependent-neglected, stated that the goal of the case was reunification, and directed Golden and Earnest to follow the provisions of the case plan.

Following a June 2, 2010 review hearing, however, the circuit court changed the goal of the case to termination of parental rights. Noting that Earnest had been jailed for domestic abuse at the time of the hearing, the court found that return of M.M. to her parents' custody was not in the child's welfare and that she should continue in the custody of DHS. At the conclusion of the order (which was a pre-printed form with various boxes checked off), the court noted that it continued to retain jurisdiction of the matter and set it for a "fast-track" termination, with a termination hearing to be held on August 5, 2010.

DHS filed its petition for termination of parental rights on June 28, 2010. In its

---

1. Golden McGaughey signed a Consent to Termination of Parental Rights and Waiver of Notice on June 2, 2010; she is not a party to this appeal.

petition, DHS alleged that Earnest had been noncompliant with the case plan and had failed to remedy the conditions that brought the child into care, had abandoned the child, and had not maintained stable housing. Citing Arkansas Code Annotated section 9–27–314(b)(3)(B)(iv) (Repl.2009), DHS alleged that Earnest had abandoned M.M. by demonstrating a willful lack of contact, provision of support, and failure to present himself to DHS or to the court to assert any parental right he might have. In addition, DHS alleged that Earnest had willfully failed to provide any material support, willfully failed to maintain contact with his child, and failed to participate in the case plan.

DHS further contended that other factors and issues had arisen subsequent to the filing of the original dependency-neglect petition that demonstrated that return of M.M. to her parents' custody was contrary to her welfare. Specifically, DHS asserted that Earnest had been offered appropriate reunification services; had not presented himself to the Department to participate in those services, and his whereabouts were unknown; had not participated in the case plan; and had not remedied the conditions that necessitated removing M.M. from his care. Finally, DHS alleged that the aggravated circumstances of abandonment existed under Arkansas Code Annotated section 9–27–341(b)(3)(B)(ix)*(a)(3)(A)* and *(B)(i)*.[2]

A termination hearing was held on August 5, 2010. Sandra Craig, a family services worker for DHS, testified that she had been the foster-care worker on the case since M.M. came into DHS's custody in December 2009. Craig said that, while Earnest and the whole family participated during the first stages of the case, she had not had a good address for Earnest for the past six months and he had not contacted her during that time. Craig noted that Earnest and Golden had separated and that he was no longer living at his previous address, but she asserted that there had been nothing preventing Earnest from participating in the case plan.

When asked about M.M., Craig testified that the girl was living with an adoptive family and was definitely adoptable. Craig opined that there was danger in returning M.M. to Earnest's care due to Earnest's schizophrenia. Craig also said that Earnest had numerous legal problems, the extent of which she did not know. Craig said that Earnest had not participated in any counseling, parenting services, or any other services offered by DHS, and she was unaware of his living situation. She further commented that Earnest had provided no financial or material support to M.M. and that it was DHS's recommendation that Earnest's parental rights should be terminated.

On cross-examination, Craig stated that she asked Golden about Earnest's whereabouts, and Golden replied that she had lost contact with Earnest after they separated and did not know where he was. Craig testified that Earnest had not attended any counseling that was offered to him, but she acknowledged that she was unaware that he had transportation problems.

Upon questioning by M.M.'s attorney ad litem, Craig testified that Earnest had not

---

**2.** "Abandonment" is defined in pertinent part in Arkansas Code Annotated section 9–27–303(2)(A) (Repl.2009), as [f]ailure of the parent to provide reasonable support and to maintain regular contact with a juvenile through statement or contact when the failure is accompanied by an intention on the part of the parent to permit the condition to continue for an indefinite period in the future and support or maintain regular contact with a juvenile without just cause.

attended parenting classes; completed a substance-abuse assessment; maintained safe, stable, and appropriate housing; or attended regularly scheduled visitations. Craig said that Earnest had known "this whole time" that M.M. was in DHS's custody but had not contacted DHS to arrange a visit, paid any child support, provided DHS with any address changes, or complied with random drug testing. In addition, Craig said that she was not aware that Earnest had maintained his medications that had been prescribed for his schizophrenia. Craig reiterated that Earnest had known that his child was in DHS's custody, and even though he had a card with DHS's address on it, she did not know if he ever came to the office to inquire about M.M., even though he had been there previously to apply for other services such as food stamps and Medicaid. Craig stated that she believed Earnest had visited M.M. perhaps two times, but during visitation, he had difficulty staying awake.

At that point, DHS rested and submitted to the court that it had demonstrated that Earnest had abandoned M.M., had not complied with or participated in the case plan, and had not provided any sort of care or support for M.M. Earnest then testified on his own behalf. Earnest asserted that he did not wish to have his parental rights terminated. He acknowledged that he had not followed the case plan but said that, when he and Golden broke up, "everything stopped." He explained that he was without a phone and in any event could not look any phone numbers up in the phone book because he could not read. Earnest denied that M.M. would be in any danger if he were permitted to take care of the child, even though he conceded that he was currently incarcerated for shoplifting. Earnest pointed out that he had previously raised six children on his own, despite his

diagnosed mental illness, and he wished to have M.M. placed in his custody.

On cross-examination, Earnest testified that, after he and Golden separated, he went into the hospital and got back on his medication, but when he got out of the hospital, Golden had already moved out of their trailer and gotten a restraining order against him. Earnest moved to another trailer park, but he did not provide his new address to DHS, which was because he did not know where the office was located. He denied ever receiving a business card from Craig. Earnest said that he asked "somebody" where the Department was, but when he finally got DHS's phone number, he was incarcerated. He conceded, however, that he had not attempted to contact DHS at all in the last five or six months.

During questioning by M.M.'s attorney ad litem, Earnest could not remember M.M.'s birthday and admitted that, at one point during a visitation, he could not remember the child's name. He agreed that he had not seen M.M. in at least four or five months, and while he could have found someone who could have called DHS for him, he did not. When asked if he knew about M.M.'s developmental problems and how he would get her to her therapy, if he were granted custody, Earnest replied, "Isn't that what DHS is for?"

At the conclusion of the testimony, DHS again asked the court to grant its petition to terminate Earnest's parental rights. When asked for a response, Earnest's attorney stated, "Your Honor, except for asking the court to take notice of Mr. McGaughey's very great parental interest and love for his daughter, I would waive argument."

The court found that DHS had met its burden of proof that M.M. was adoptable. The court further found that M.M. would be subject to potential harm that would

directly affect her health and safety if returned to the care and custody of Earnest, and that Earnest was incapable of physically or financially providing for the needs of the child. The court noted Earnest's testimony admitting to drug use and acknowledging his schizophrenia; moreover, the court pointed out that Earnest was currently incarcerated and had revocation proceedings pending. The court concluded that Earnest had "the inability or the incapacity to remedy or rehabilitate the conditions that resulted in the removal of the child." Accordingly, the court granted DHS's petition to terminate Earnest's parental rights. Upon the ad litem's request, the court then made a specific finding of aggravated circumstances.

The court entered its written order terminating Earnest's parental rights on August 27, 2010. The court specifically found that there were sufficient grounds to terminate Earnest's rights in that "other factors and issues arose subsequent to the filing of the original petition" pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(B)(vii)*(a)*, in that Earnest had been offered appropriate reunification services but had not presented himself to DHS to participate in the services; had not participated in the case plan; had not remedied the conditions that necessitated removing M.M. from his care; and had numerous physical and mental difficulties that demonstrated Earnest's unfitness to parent M.M. In addition, the court found that an aggravated circumstance existed under section 9–27–341(b)(e)(B)(ix)*(a)(3)(A)* and *(B)(i)*, in that Earnest had abandoned the child, such that there was little likelihood that services to Earnest would result in successful reunification.

Earnest filed a timely notice of appeal on September 17, 2010, stating that he was appealing the order terminating his paren-

tal rights. On appeal, he raises two points, asserting that (1) the trial court failed to correctly apply the termination statutes; and (2) the court's finding that DHS made reasonable efforts to provide family services is clearly erroneous.

A heavy burden is placed upon a party seeking to terminate the parental relationship, and the facts warranting termination must be proven by clear and convincing evidence. *Friend v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 606, 344 S.W.3d 670; *Strickland v. Ark. Dep't of Human Servs.*, 103 Ark. App. 193, 287 S.W.3d 633 (2008). The question this court must answer is whether the trial court clearly erred in finding that there was clear and convincing evidence of facts warranting the termination of parental rights. *Hall v. Ark. Dep't of Human Servs.*, 101 Ark. App. 417, 278 S.W.3d 609 (2008). Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. Pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(A) (Repl. 2008), an order terminating parental rights must be based on a finding that termination is in the child's best interest, which includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parents. In addition, the proof must establish at least one of several statutory grounds. Ark.Code Ann. § 9–27–341(b)(3)(B). This court gives a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Dowdy, supra.*

Earnest's first point on appeal pertains to the decision of the circuit court to

terminate Earnest's parental rights on a "fast-track" basis. Earnest notes that, at the time a case plan was filed in this matter on March 12, 2010, the permanency plan was "reunification with a concurrent plan of adoption." On June 2, 2010, however, the court entered a review order that changed the goal of the case to termination and placed a check-mark in the box next to "fast-track/no reunification." Earnest complains that DHS never filed a "no reunification services" motion pursuant to Arkansas Code Annotated section 9–27–365 (Repl.2009), and the court "entered an order of no reunification in the context of a review hearing, without any motion requesting same, not at an adjudication hearing." Earnest also argues that the court failed to enter a written order containing appropriate findings of facts and conclusions of law on the "no reunification issue," again in violation of the statute, and also failed to hold a permanency-planning hearing or issue a permanency-planning order as required by the statute.

We are unable to reach the merits of Earnest's arguments. Because he failed to raise any of these issues below. As noted above, at the conclusion of the termination hearing, Earnest's attorney specifically waived any argument. Accordingly, the circuit court was not presented with an opportunity to consider or rule on any of the arguments. It is well settled that the appellate courts will not address an issue that is raised for the first time on appeal. *Lamontagne v. Ark. Dep't of Human Servs.*, 2010 Ark. 190, 366 S.W.3d 351; *Kelley v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 481, 2011 WL 2577561.

■ In his second point on appeal, Earnest argues that the trial court erred in finding that DHS made reasonable efforts to reunite the family. He complains that Sandra Craig, the DHS caseworker, never attempted to contact him and made no attempt to provide him with services, and he asks this court to reverse with directions that DHS make a bona fide effort to provide services to him. Again, however, we do not reach the merits of his argument.

■ When an appellant fails to attack the trial court's independent, alternative basis for its ruling, we will not reverse. *Martin v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 423, 384 S.W.3d 580; *Thomsen v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 687, 370 S.W.3d 842. Earnest does not address or challenge the trial court's finding, pursuant to Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)*(a)*, that other factors and issues sufficient to warrant the termination of Earnest's parental rights arose subsequent to the filing of the original petition for termination. Proof of only one statutory ground is sufficient to terminate parental rights. *Tenny v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 360, 383 S.W.3d 876; *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 526, 2010 WL 2522197. Because Earnest has failed to challenge the trial court's finding that an independent, alternative statutory ground existed, we conclude that there is no basis for reversing on this issue.

Affirmed.

WYNNE and HOOFMAN, JJ., agree.