BART F. VIRDEN, Judge
The Mississippi County Circuit Court terminated the parental rights of appellants Rodney Laster and Melissa Parnell to their four children, J.L.(1) (DOB: 1-25-2011) and triplets, J.L.(2), J.L.(3), and A.L. (DOB: 6-28-2015). The parents bring separate appeals from the order terminating their rights. Laster argues that (1) the trial court lost subject-matter jurisdiction to adjudicate J.L.(1) dependent-neglected when it failed to comply with mandatory statutory time frames, (2) the trial court lacked subject-matter jurisdiction to terminate his parental rights to the triplets *268 because they were never adjudicated dependent-neglected, (3) termination was not proved by clear and convincing evidence where the Arkansas Department of Human Services (DHS) failed to offer him any services, (4) the trial court erred in terminating his parental rights because no grounds were proved, and (5) the trial court erred in finding that termination was in the children's best interest, specifically, there was no risk for potential harm. Parnell joins Laster's first two points on appeal, and she likewise argues that grounds were not proved against her. We affirm the termination of parental rights as to both parents.
I. Procedural History
On February 4, 2015, DHS filed a petition for emergency custody and dependency-neglect as to J.L.(1). In an affidavit attached to the petition, family-service worker Laquanta Lewis stated that on February 2 someone had called the child-abuse hotline to report that J.L.(1) had been sexually abused by Laster. When Parnell took J.L.(1) to a hospital emergency room for an examination, she was arrested for having violated a no-contact order that was in place between her and Laster. Law enforcement could not locate Laster to arrest him for the same violation. Because J.L.(1) was left with no caregiver, DHS took a seventy-two-hour hold on the child. A second affidavit was filed by Investigator Katherine Chlapecka with the Arkansas State Police Crimes Against Children Division. She attested that she interviewed J.L.(1) at the hospital on February 2, 2015, and that he told her that Laster had touched his penis and buttocks.
An ex parte order for emergency custody was entered on February 4, 2015. On February 5, 2015, the trial court found that probable cause existed for issuance of the emergency order. The trial court noted that DHS had been involved with the family since 2004, ordered DHS to develop an appropriate case plan, and scheduled an adjudication hearing for April 16, 2015. The hearing was continued for good cause until June 15, 2015. The hearing was again continued for good cause until August 26, 2015, with the explanation that Parnell was unavailable because she was on medical bed rest. The parties did not object to the continuances.
On August 10, 2015, DHS filed a petition for emergency custody and dependency-neglect as to the triplets, who had been born at the end of June. An affidavit was attached to the petition in which family-service worker Greg Watson attested that the triplets had been taken into custody based on a true finding of failure to protect as to Parnell and a true finding of sexual abuse as to Laster. The affidavit noted that J.L.(1) was in foster care and that there was a substantial risk of harm if the triplets were placed with Parnell. The affidavit indicated that there had been numerous calls to the child-abuse hotline with Parnell as the alleged offender and that an older child of Parnell's, T.P., was currently in the permanent custody of his great-grandmother. The affidavit further noted that Laster had had no contact with the triplets as he had been incarcerated. On August 11, 2015, an ex parte order for emergency custody as to the triplets was entered, and the trial court later found probable cause to issue the emergency order.
On December 14, 2015, a review order was entered as to all four children. The trial court found that DHS had made reasonable efforts to provide family services and that Parnell had maintained stable housing and income, had completed parenting classes, had watched "The Clock is Ticking" video, and had completed a drug-and-alcohol assessment. The trial court *269 nevertheless found that returning the children to their parents' custody was contrary to their welfare and therefore continued custody with DHS.[1]
On June 24, 2016, an adjudication order was entered listing all four children in the caption. The order indicated that the cause had been presented to the court for adjudication on August 26, 2015. The following language appears in the order:
The Court finds by a preponderance of the evidence that the juvenile is dependent-neglected as defined in the Arkansas Juvenile Code and that the allegations in the petition are true and correct, specifically, the Court finds the juvenile was [sic] failure to protect and risk of harm, as to the mother, as the Court finds that [J.L.(1) ] was sexually abused, probably by his father, on or about February 2, 2015, based on the testimony of Nurse Practitioner, Dawn McPike, the mother, and the CACD witness. The Court defers and reserves the sexual abuse [sic] and sexual abuse finding as to the father pending the STD results. The [Court] finds based on the testimony that the father is a registered sex offender and the mother knew of that fact and that she knew of the No Contact Order out of Poinsett County regarding the father.
On June 29, 2016, a permanency-planning order was entered. The trial court found the following:
The Court finds that the mother has complied with the Court Orders however the mother has continued to remain in a relationship with Rodney Laster's father and there is concern with her choices in men, who she allows in her home. The Court finds that the putative father has not complied with the case plan in that he has not: The father is currently incarcerated, and will be until May, 2017 as well as having a true finding for sexual abuse.
The trial court determined that it was in the best interest of all four children to terminate parental rights and set the goal of adoption.
On July 20, 2016, DHS filed a petition for termination of parental rights, alleging grounds under Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a ) (twelve months out of the custody of the parent and failure to remedy conditions that caused removal); Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(b ) (twelve months out of the noncustodial parent's home and failure to correct conditions that prevent child from safely being placed in parent's home); Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)(a ) (willful failure to provide significant material support or to maintain meaningful contact); Ark. Code Ann. § 9-27-341(b)(3)(B)(vi)(a ) (sexual abuse of a juvenile or sibling perpetrated by the parent or parents); Ark. Code Ann. § 9-27-341(b)(3)(B)(viii) (sentenced in a criminal proceeding for a substantial period of the juvenile's life); and Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a )(3 ) (B )(i ) (aggravated circumstances: juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification).[2] A termination hearing was scheduled for September 23, 2016, but was continued multiple times until it was finally held on February 24, 2017. The parents, again, did not object to the continuances.
*270 II. Hearing Testimony
Sylvia Ware, a family-service-worker supervisor for DHS, testified that Parnell had completed all services, had regularly visited her children, and had done everything she had been asked to do. Ware stated that, despite Parnell's compliance with the case plan, she was unable to recommend placement with her because of Parnell's decision-making in dating two sex offenders: first, Laster, and then a man named Adrian Williams. She said that Parnell had obtained stable housing only in the last two months. Ware conceded that DHS had offered no services to Laster, other than transportation to court, because he was incarcerated.
Sharon Washington, family-service worker for DHS, testified that, although J.L.(1) had a sexually transmitted disease (STD), it was not a barrier to his adoption and that his current foster family wished to adopt him. She said that there were no barriers to adoption of the triplets and that their current foster family wished to adopt them.
Christopher Dow, outpatient therapist at Mid-South Health Systems and licensed psychological examiner, testified that he evaluated Parnell on October 6, 2016. He diagnosed unspecified depressive disorder, unspecified anxiety disorder, cannabis dependence-moderate, and borderline intellectual functioning. He testified that he believed that some of Parnell's diagnoses could be "fixed or remedied"; for example, the emotional issues and her history of substance abuse. He said that "fix" was too strong a word with reference to her borderline intellectual functioning but that she could learn how to adapt and cope more effectively. Dow noted that he had recommended mental-health counseling for Parnell. He stated that Parnell would need a strong support system if her children were returned to her custody. On examination by the court, Dow said that he did not see an end to Parnell's need for a support system.
Dawn McPike, an advanced practice nurse employed by UAMS and a participant in the "Team for Children at Risk" program at Arkansas Children's Hospital, testified that she examined J.L.(1), who had just turned four years old, and that he had made some concerning statements to her. McPike said that J.L.(1) had told her, "My daddy licked me there," pointing to his penis and then his buttocks. McPike asked him what he had been licked or touched with, and J.L.(1) responded, "him mouth," pointing to his penis, and "him dick," pointing to his buttocks. McPike said that J.L.(1)'s physical examination was normal, except for clusters of lesions around the tip and edges of his penis, which were confirmed to be genital warts. She said that such warts could be transmitted in ways other than by sexual contact but that, based on his age, it was "more concerning for sexual contact."
Melissa Parnell testified that DHS had taken custody of J.L.(1) because he had been molested. She said that when her case was opened, she had been living with Laster and Laster's brother, Donnie. She stated that she was aware that Laster was a sex offender and that Donnie was a level 4 sex offender. Parnell said that what Laster had done to be labeled a sex offender was in his past and that "he done his time." According to Parnell, Laster had seldom been at home because he was "probably working" but that Donnie, who was unemployed, had often been at home. She said that it was possible that J.L.(1) had regarded Donnie as a father figure. Parnell said that she "did not think" she had ever witnessed Laster doing anything sexual in nature to J.L.(1).
Parnell further testified that DHS had offered her services and that she had done *271 everything that had been asked of her. She stated that she receives $720 a month in SSI disability benefits because she is "a slow learner." She said that she had not sought any mental-health counseling or assistance because, she said, "I don't need it 'cause I can be my own counselor." Parnell said that, before she obtained her current four-bedroom home "in the projects," she had been living with Laster's father, Kenneth. When she was told by DHS caseworkers that she could not live with Kenneth, she moved out. She said that Laster's family was a good support system for her and that she did not need friends because she was her own friend. Parnell said that her grandmother had helped her and had custody of her oldest child, T.P., and that sometimes her mother and her sister helped. Parnell said, "So I would have help but I actually I don't need help to take care of my kids. I can do it by myself, I'm a strong person."
Rodney Laster testified that he currently resides at the Brickeys unit of the Arkansas Department of Correction and is there on a parole violation. He said that the original sentence for which he had been placed on parole was for second-degree battery, third-degree battery, and terroristic threatening. He said that he had been sentenced to an aggregate total of five years' imprisonment but that he had been paroled after having served eleven months. He said that, since the parole violation, he has been incarcerated for two years. Laster stated that he did not know when he would be released. Laster said that rape charges were brought against him but that he had been told the charges had been dismissed. He conceded that he is a level 2 sex offender.
Laster agreed with Parnell's testimony that he had very seldom been at home while the two were living together. He said that he had been working in construction and "doing a little other stuff I shouldn't be on the other side." Laster stated that no services had ever been offered to him but that if they had been, he would have participated. Laster said that he had just started a new eighteen-month program to get offenders ready to go back into society. Laster testified that he has three other children and grandchildren. He insisted that he would never hurt them and denied ever having abused J.L.(1).
Kenneth Laster, Rodney Laster's father, testified that he calls Parnell his daughter-in-law but that Parnell had never been married to his son because his son was still married to his first wife. He said that Parnell had lived with him "so many times." He said, "[Rodney]'d go to the pen, she would come stay with me until he would get out of the pen and then she would go back to him." He said that, although he had been accused of abusing or neglecting "R.L.," the allegation had been unsubstantiated and that his name was supposed to be removed from the child-abuse registry.
At the end of the hearing, the trial court granted dismissal on some of the grounds as to each parent. The trial court then took the matter under advisement.
III. Order Terminating Parental Rights
Pursuant to Ark. Code Ann. § 9-27-341(b)(3), an order forever terminating parental rights shall be based on a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood that the juvenile will be adopted if the termination petition is granted and the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). The order must also find by clear and convincing evidence one or more *272 grounds. Ark. Code Ann. § 9-27-341(b)(3)(B).
On April 21, 2017, the trial court entered an order terminating parental rights as to both Laster and Parnell. The trial court found that DHS had proved grounds, including twelve-month failure to remedy, sexual abuse of a juvenile or sibling, and substantial sentence.[3]
The trial court also found that termination was in the children's best interest. The trial court found that the juveniles were adoptable and that there would be potential harm in returning the children to the parents. Specifically, the trial court found that Laster was currently incarcerated and had been so, off and on, since at least March 2013 and that there was a true finding of sexual abuse by the Arkansas State Police and a similar finding by the court. As to Parnell, the trial court found that, although she had completed all services, she had only recently obtained housing, had limited income from SSI benefits, had "poor decision-making skills" due to her knowingly residing with sex offenders, and had mental-health diagnoses. The trial court noted that DHS had failed to follow up on the recommendation that Parnell receive mental-health counseling but found that, given "the mother's attitude and opinion," further counseling and a support system would have been ineffective. The trial court pointed out that the children needed permanency in that J.L.(1) had been out of the home for two years and that the triplets had been in foster care for a year and a half.
IV. Standard of Review
We review termination-of-parental-rights cases de novo. Williams v. Ark. Dep't of Human Servs. , 2013 Ark. App. 622, 2013 WL 5872757. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. Id. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. Camarillo-Cox v. Ark. Dep't of Human Servs. , 360 Ark. 340, 201 S.W.3d 391 (2005). On appellate review, this court gives a high degree of deference to the trial court, which is in a far superior position to observe the parties before it. Id. Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. Friend v. Ark. Dep't of Human Servs. , 2009 Ark. App. 606, 344 S.W.3d 670.
V. Discussion
The purpose of the termination-of-parental-rights statute, Ark. Code Ann. § 9-27-341(a)(3), is to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence that a return to the family home cannot be *273 accomplished in a reasonable period of time, as viewed from the juvenile's perspective. Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. Shaffer v. Ark. Dep't of Human Servs. , 2016 Ark. App. 208, 489 S.W.3d 182.
A. Joint Arguments
1. Lack of subject-matter jurisdiction as to J.L.(1)
Arkansas Code Annotated section 9-27-327(a)(4)(A) (Supp. 2017) provides that the dependency-neglect adjudication hearing shall be held within thirty days after the probable-cause hearing. On a motion of the court or any party, the court may continue the adjudication hearing up to sixty days after the removal for good cause shown. Ark. Code Ann. § 9-27-327(a)(4)(B). A written adjudication order shall be filed by the court within thirty days of the date of the hearing or prior to the next hearing, whichever is sooner. Ark. Code Ann. § 9-27-327(f).
The parents argue that an adjudication hearing was not held until almost seven months after DHS had removed J.L.(1) from the home, and the adjudication order was not filed until ten months after the hearing had been held. The parents argue that the trial court lost jurisdiction when it did not hold an adjudication hearing and did not file the adjudication order within the mandatory time frames. The parents state that they realize that the rulings from an adjudication order are appealable, but they maintain that this is a challenge to subject-matter jurisdiction, which can be raised at any time.
While it is unfortunate that the adjudication hearing here was not held soon after J.L.(1) had been taken into DHS custody, which is what is contemplated by the statute, the parents did not object to the continuances. They did not raise any argument to the trial court about the timeliness of the hearing or the entry of the order. The parents characterize this as subject-matter jurisdiction, but it is not. Jurisdiction of the subject matter is power lawfully conferred on a court to adjudge matters concerning the general question in controversy. Banning v. State , 22 Ark. App. 144, 737 S.W.2d 167 (1987). If the court errs in its decision or proceeds irregularly within its assigned jurisdiction, the remedy is by appeal or direct action in the erring court. Id. The parents could have complained directly to the trial court or appealed from the adjudication order, but they did neither.
The parents rely on our supreme court's holding in Ellis v. Arkansas Department of Human Services , 2016 Ark. 441, 505 S.W.3d 678, in which it was held that the trial court clearly erred in not holding a review hearing. Contrary to the parents' assertion, the supreme court did not hold in Ellis that the trial court had lost jurisdiction when it failed to hold a timely hearing; rather, it held that the trial court had clearly erred in its failure to hold a timely hearing, and the case was remanded to the trial court for further proceedings.
Next, the parents recognize that this court has specifically held that the failure to hold hearings within the time frame provided by statute does not deprive the trial court of jurisdiction. See, e.g. , Caruthers v. Ark. Dep't of Human Servs. , 2017 Ark. App. 230, 519 S.W.3d 350 (noting that, while the applicable statute does provide that a hearing "shall" be held within ninety days, a trial court does not lose jurisdiction). The parents ask that this court overrule a line of cases holding that a trial court is not deprived of jurisdiction *274 due to untimely hearings and filings. See Wade v. Ark. Dep't of Human Servs. , 337 Ark. 353, 990 S.W.2d 509 (1999) ; Faussett v. Ark. Dep't of Human Servs. , 2017 Ark. App. 168, 2017 WL 1019021 ; Newman v. Ark. Dep't of Human Servs. , 2016 Ark. App. 207, 489 S.W.3d 186 ; McPherson v. Ark. Dep't of Human Servs. , 2013 Ark. App. 525, 2013 WL 5371937 ; Hill v. Ark. Dep't of Human Servs. , 2012 Ark. App. 108, 389 S.W.3d 72. The parents argue that this court should adopt the same interpretation of mandatory hearing requirements as in commitment hearings or criminal proceedings, citing Chatman v. State , 336 Ark. 323, 985 S.W.2d 718 (1999), and Campbell v. State , 311 Ark. 641, 846 S.W.2d 639 (1993). They also argue that other states have taken positions consistent with their argument. The parents even acknowledge our supreme court's holding in Noble v. Norris , 368 Ark. 69, 243 S.W.3d 260 (2006), that a court's failure to follow the statutory procedure in the exercise of its power may constitute reversible error but that it does not oust the court's subject-matter jurisdiction. We decline to overrule our own precedent, and we have no authority to overrule decisions by the Arkansas Supreme Court. See, e.g. , Moe v. State , 2017 Ark. App. 546, 532 S.W.3d 110.
2. Lack of subject-matter jurisdiction as to the triplets
The parents argue that, while the triplets were listed in the case style of the adjudication order, they were not adjudicated dependent-neglected because the order references only "the Juvenile" and dates pertaining to only J.L.(1). According to the parents, the written order controls,[4] and because the triplets had not been adjudicated dependent-neglected, the trial court had no jurisdiction to terminate their parental rights.
The general rule is that an issue must be raised and ruled on below in order to be preserved for appeal. Williams v. Ark. Dep't of Human Servs. , 2015 Ark. App. 171, 458 S.W.3d 271. There is an exception to this rule for questions of subject-matter jurisdiction. Id. Although the parents couch their argument as one involving subject-matter jurisdiction, as explained above, the trial court had subject-matter jurisdiction to terminate parental rights. Banning, supra. Because the parents' argument is not preserved, we do not address it.
B. Laster's Arguments
1. Grounds
Proof of only one statutory ground is sufficient to terminate parental rights. Sharks v. Ark. Dep't of Human Servs. , 2016 Ark. App. 435, 502 S.W.3d 569. Under Ark. Code Ann. § 9-27-341(b)(3)(B)(viii), the trial court may terminate parental rights on grounds that the parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life. Laster argues that this ground cannot support termination of his parental rights. He contends that he was incarcerated from February 2015 through May 2017; that his children were not yet two years old; and that almost half of his forty-two-month sentence had been served before the triplets were even born.
Although the trial court terminated Laster's parental rights on the substantial-sentence ground as to all the children, Laster challenges this ground *275 only as it pertains to the triplets. When an appellant fails to attack the trial court's independent, alternative basis for its ruling, we will not reverse. McGaughey v. Ark. Dep't of Human Servs. , 2011 Ark. App. 536, 386 S.W.3d 13. Because Laster does not challenge this ground as to J.L.(1), we could affirm the termination as to J.L.(1) on this ground. We instead hold that the trial court did not clearly err in finding grounds under Ark. Code Ann. § 9-27-341(b)(3)(B)(vi)(a ) (the court has found the juvenile or a sibling dependent-neglected as a result of sexual abuse perpetrated by the juvenile's parent or parents). In the adjudication order, the trial court found that J.L.(1) was dependent-neglected as a result of sexual abuse. Although the trial court "reserved" its ruling that Laster was the perpetrator of the abuse, pending the outcome of the STD testing, the trial court in its termination order confirmed its suspicion that Laster had sexually abused J.L.(1), thus satisfying the sexual-abuse-of-a-sibling ground.
As it relates to the triplets and the substantial-sentence ground, Laster had not even met the triplets because he had been incarcerated when they were born and was still incarcerated at the time of the termination hearing. Although there was mention of a May 2017 release date, Laster testified that he did not know when he would be released. In Hill v. Arkansas Department of Human Services , 2012 Ark. App. 108, 389 S.W.3d 72, this court held that a three-year sentence was a substantial period of time in the life of a two-year-old child because she will have spent more than half her life in foster care by the time the mother could be released from prison. Here, the triplets were a little more than one month old when they were put into foster care, where they remained from August 10, 2015, to February 24, 2017. Laster still had two years left to serve on his five-year sentence, even though it was possible that he could be released in May 2017. It is the prison sentence itself, not the potential release date, that determines whether this statutory ground is satisfied. Edwards v. Ark. Dep't of Human Servs. , 2016 Ark. App. 37, 480 S.W.3d 215.[5] We cannot say that the trial court clearly erred in finding that at least one ground was proved as to J.L.(1) and the triplets.
2. Best interest
Laster does not challenge the finding that all four children are adoptable, but he argues that DHS provided no services to eliminate or reduce the risk of potential harm and that he had submitted "to services and rehabilitation" while incarcerated. Further, he testified that he loves his children; that he has children and grandchildren that he has not abused; and that he did not abuse J.L.(1).
In determining potential harm, the trial court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. Harbin v. Ark. Dep't of Human Servs. , 2014 Ark. App. 715, 451 S.W.3d 231. The potential-harm evidence must be viewed in a forward-looking manner and considered in broad terms. Id. Neither the Arkansas State Police nor the trial court believed Laster's denials, and they found that he had sexually abused J.L.(1). This represents potential harm that prevents all four children from being placed in Laster's care.
*276 Blanchard v. Ark. Dep't of Human Servs. , 2012 Ark. App. 215, 395 S.W.3d 405.
C. Parnell's Argument
1. Failure-to-remedy ground
Parnell argues that none of the juveniles had been adjudicated dependent-neglected and that she did not fail to remedy the conditions that caused their removal from her custody. She asserts that J.L.(1) had been removed due to allegations of sexual abuse, her failure to protect him, and her violation of a no-contact order and that the triplets had been removed based on the facts pertaining to J.L.(1). Parnell maintains that she remedied the causes of removal because she had complied with the case plan and all of the trial court's orders, and she had not violated the no-contact order since the case had been opened. She states that the only impediment preventing reunification was her "poor decision-making" and failure to have stable housing throughout the length of the case, but she maintains that neither was a basis for the children's removal.
We have already rejected Parnell's argument that J.L.(1) had not been adjudicated dependent-neglected because the trial court lacked subject-matter jurisdiction based on an untimely hearing. J.L.(1) was specifically adjudicated dependent-neglected as a result of sexual abuse in the adjudication order entered on June 24, 2016. Parnell argues in her petition for rehearing that this court could not affirm the trial court's termination of her parental rights on the failure-to-remedy ground as to the triplets because they were never adjudicated dependent-neglected. We agree that the body of the trial court's adjudication order does not contain specific factual findings concerning the triplets; however, we note that at the termination hearing Parnell's counsel read through the allegations in DHS's petition on the failure-to-remedy ground and stated that she was "not disputing" the allegations on the first two elements of the ground-the adjudication of dependency-neglect and the twelve-month period. It is well settled that under the doctrine of invited error, a party may not complain on appeal of an erroneous action of a trial court if he or she induced or acquiesced in that action. J.I. Case Co. v. Seabaugh , 10 Ark. App. 186, 662 S.W.2d 193 (1983) ; see also Rogers v. Ritchie , 2017 Ark. App. 420, 528 S.W.3d 272 (holding that, pursuant to invited-error doctrine, Rogers was precluded from arguing that guardianship was void on appeal where she had requested the guardianship without obtaining the requisite professional evaluation and had argued its validity when trustees moved to set it aside); Clark v. Ark. Dep't of Human Servs. , 2016 Ark. App. 286, at 6, 493 S.W.3d 782, 788 (holding that, pursuant to invited-error doctrine, where Clark's attorney argued to trial court that "significant change of circumstances" was required to effectuate a change of custody that arose solely from dependency-neglect action, she could not then argue on appeal that the trial court had used the wrong standard from domestic-relations proceedings). Parnell invited the error she now complains of on appeal and in her petition for rehearing.
As for the remaining elements of the failure-to-remedy ground, just because Parnell complied with the case plan and all of the court's orders does not mean she was in a position to have her children returned to her. J.L.(1) had been removed due, in part, to Parnell's failure to protect him from sexual abuse, and the triplets were removed based on that same failure to protect their sibling. The evidence showed that Parnell had chosen to live with and date sex offenders. Moreover, at the termination hearing, she excused Laster's behavior, saying that what he had *277 done to become labeled a sex offender was in his past. Although Parnell said that she wanted nothing more to do with Laster, Kenneth Laster indicated that Parnell has a pattern of breaking up with Laster and then returning to him as soon as he is released from prison.
Parnell also argues that DHS failed to provide meaningful services to address the issues that caused removal. Specifically, she states that the evidence shows that DHS failed to provide a referral for mental-health counseling and did nothing to assist her in obtaining an appropriate support network. Parnell points out that Dow testified that some of her mental-health diagnoses could be fixed or remedied, yet DHS failed to offer any therapy to address concerns about her poor decision-making.
The trial court acknowledged that DHS failed to refer Parnell for mental-health counseling but found that Parnell's testimony indicated that she would have resisted that service because she felt that she did not need counseling. Likewise, Parnell testified that she had a support system through both her family and Laster's family but that she did not need a support system because she could raise her children without any help. Dow had written in a report that mental-health treatment could be "very helpful for Ms. Parnell if she is open to utilizing it ...." (Emphasis added.) Participating in mental-health counseling, alone, would not have necessarily prepared Parnell to have her children returned to her. Parnell's testimony showed that she tended to minimize the pasts of the sex offenders with whom she surrounded herself and her children. Also, the fact that DHS failed to provide the referral for mental-health counseling does not mean that DHS made no meaningful efforts to provide family services to reunify her with the children.
We affirm the termination of Parnell's parental rights as to all four children on the failure-to-remedy ground. J.L.(1) was clearly adjudicated dependent-neglected, and Parnell invited any error in the adjudication of dependency-neglect as to the triplets. We do note, however, that other termination grounds do not specifically require an adjudication or an adjudication as to all of the juveniles involved. See, e.g. , Masters v. Ark. Dep't of Human Servs. , 95 Ark. App. 375, 377 n.1, 237 S.W.3d 125, 126 n.1 (2006) (discussing the 2005 amendment to the substantial-sentence ground under Ark. Code Ann. § 9-27-341(b)(3)(B)(viii), which removed the adjudication requirement).
2. Sexual-abuse-of-a-sibling ground
The trial court also terminated Parnell's parental rights on the sexual-abuse-of-a-sibling ground.[6] Arkansas Code Annotated section 9-27-341(b)(3)(B)(iv)(a ) provides as a ground that the court has found the juvenile or a sibling dependent-neglected as a result of neglect or abuse that could endanger the life of the child, sexual abuse, or sexual exploitation, any of which was perpetrated by the juvenile's parent or parents. The statute goes on to provide that such findings by the trial court shall constitute grounds for immediate termination of the parental rights of one or both of the parents. Ark. Code Ann. § 9-27-341(b)(3)(B)(iv)(b ). In its termination order, the trial court found the following:
The court has found [J.L.(1) ], a sibling of the triplets, dependent-neglected as a *278 result of sexual abuse-sexual contact in this case-caused by [J.L.(1) ] being diagnosed with genital herpes (warts), HPV, with credible testimony indicating that Rodney Laster, the father, is the perpetrator.
On appeal, Parnell argues that this ground could not have been relied on by the trial court because (1) all four children had to be adjudicated dependent-neglected, (2) the dependency-neglect finding at adjudication had to be based on a finding of sexual abuse by a parent, and (3) the adjudication order had to find that the sexual abuse was perpetrated by the parent whose rights are terminated.
We disagree with each of Parnell's contentions. The focus of an adjudication hearing is on the child, not the parent. Eason v. Ark. Dep't of Human Servs. , 2012 Ark. App. 507, 423 S.W.3d 138. At this stage of a proceeding, the juvenile code is concerned with whether the child is dependent-neglected. Id. An adjudication of dependency-neglect occurs without reference to which parent committed the acts or omissions leading to the adjudication; the juvenile is simply dependent-neglected. Id. This court has recognized that the abuse or neglect of one sibling can establish that another sibling is at substantial risk of serious harm-even though there is no reason to think that the other sibling has also been actually abused or neglected-and that it is the risk of harm that is created by one sibling's abuse or neglect that makes a finding of dependency-neglect regarding the other sibling appropriate. Id.
The statute setting forth the sexual-abuse-of-a-sibling ground provides that there must have been a finding of dependency-neglect as to the juvenile or a sibling of the juvenile for, among other things, sexual abuse perpetrated by a parent or parents. Ark. Code Ann. § 9-27-341(b)(3)(B)(iv)(a ). A "dependent-neglected juvenile" is defined as any juvenile who is at substantial risk of serious harm as a result of, among other things, the sexual abuse of the juvenile, a sibling, or another juvenile. Ark. Code Ann. § 9-27-303(18)(A)(iii). The definition of dependency-neglect does not require that the trial court identify the perpetrator of the sexual abuse. In the adjudication order, the trial court found that J.L.(1) "was sexually abused , probably by his father, on or about February 2, 2015, based on the testimony of Nurse Practitioner, Dawn McPike, the mother and the CACD witness." (Emphasis added.) The trial court, however, reserved its finding as to the identity of the perpetrator of the sexual abuse until STD testing could confirm the trial court's suspicions. It is not uncommon for trial courts at the adjudication stage to find abuse or neglect but also find that the offender is unknown. See, e.g. , Ward , supra ; Villasaldo v. Ark. Dep't of Human Servs. , 2014 Ark. App. 465, 441 S.W.3d 62. The failure to identify the perpetrator of the sexual abuse does not diminish the trial court's finding of dependency-neglect. At the termination hearing, the trial court found that Laster had indeed sexually abused a sibling of the juveniles, therefore satisfying the requirements of the sexual-abuse-of-a-sibling ground.
That finding of sexual abuse of a sibling of the triplets constituted grounds for immediate termination of the parental rights of one or both parents. Ark. Code Ann. § 9-27-341(b)(3)(B)(iv)(b ). It is clear that, when the trial court first found that J.L.(1) had been sexually abused, it attributed some culpability in the sexual abuse to Parnell by noting that Parnell was aware of Laster's status as a sex offender and that she had failed to protect J.L.(1). Moreover, at the termination hearing, Parnell excused Laster's sex-offender status *279 by saying that it was in his past and that he had "done his time." We cannot say that the trial court clearly erred in terminating Parnell's parental rights to all four of her children on the sexual-abuse-of-a-sibling ground.
Although proof of only one statutory ground is sufficient to terminate parental rights, Sharks , supra , we affirm the termination as to all four children on alternative grounds of failure to remedy or the sexual abuse of a sibling. Parnell does not challenge the trial court's determination that termination of her parental rights was in her children's best interest.
Petition for rehearing granted as to Parnell and denied as to Laster; substituted opinion issued; affirmed.
Abramson, Gladwin, Klappenbach, Whiteaker, and Brown, JJ., agree.

No specific mention is made of Laster in the court's order.

Ark. Code Ann. § 9-27-341(b)(3)(B) (Repl. 2015).

The trial court omitted its ruling from the bench denying dismissal on grounds of aggravated circumstances as to both parents. In our de novo review, this court may hold that grounds for termination were proved, even if not specifically stated in the trial court's order. Wallace v. Ark. Dep't of Human Servs. , 2015 Ark. App. 481, 470 S.W.3d 286.

At the termination hearing, DHS introduced as an exhibit the abstract of the adjudication hearing in which the trial court had specifically ruled from the bench that both J.L.(1) and the triplets were adjudicated dependent-neglected.

Laster argues on appeal that the trial court erred in terminating his parental rights because DHS did not make reasonable efforts to provide him with appropriate family services; however, the plain language of the substantial-sentence and sexual-abuse-of-a-sibling grounds does not require DHS to offer him family services.

Although Parnell's name does not appear in the trial court's specific factual findings for this ground found in the termination order, DHS alleged the ground against Parnell in its petition and argued it at the termination hearing. At the conclusion of the hearing, the trial court denied Parnell's "directed-verdict" motion as to this ground.