Cite as 2022 Ark. App. 523

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-22-324

| | |
|---|---|
| CAREY D. BELL | Opinion Delivered December 14, 2022 |
| APPELLANT | |
| | APPEAL FROM THE POINSETT |
| | COUNTY CIRCUIT COURT |
| V. | [NO. 56JV-20-53] |
| | |
| ARKANSAS DEPARTMENT OF | HONORABLE CHARLES M. |
| HUMAN SERVICES AND MINOR | MOONEY, JR., JUDGE |
| CHILD | |
| APPELLEES | |
| | AFFIRMED |

**WAYMOND M. BROWN, Judge**

The Poinsett County Circuit Court terminated the parental rights of appellant Carey

D. Bell to his daughter, MC (Minor Child), born January 10, 2020.[1]  Appellant argues on

appeal that termination is not in MC's best interest.  We affirm.

MC was born with drugs in her system due to her mother's drug use during

pregnancy.  The Arkansas Department of Human Services (DHS) attempted to open a

protective-services case; however, the mother failed to cooperate and went into hiding.  On

April 2, 2020, MC and her mother were found hiding in someone's attic.  A subsequent

drug test on the mother revealed that she was positive for methamphetamine,

---

[1]The circuit court also terminated the parental rights of MC's mother, Valerie Drew;
however, she is not a party to this appeal.

amphetamines, opiates, THC, and fentanyl.  At that time, DHS placed a seventy-two-hour hold on MC.  A petition for emergency custody and dependency-neglect was filed on April 6, and appellant was listed as the putative father.  An ex parte order for emergency custody was filed the same day.  Appellant, who was incarcerated in the Arkansas Department of Correction, was served with a notice to putative parents on April 10 via service on the prison's warden.  The circuit court entered an order on June 9 authorizing genetic testing of appellant.  MC was adjudicated dependent-neglected due to parental unfitness caused by her mother's drug use.  The circuit court noted that appellant did not contribute to the dependency-neglect of MC but found that appellant was unfit for purposes of custody due to his incarceration.  The case goal was set at reunification.  In a review order filed on November 9, the circuit court left it to the attorney ad litem's discretion to approve whether MC would be allowed to visit appellant in prison.  There is no indication that visitation was ever approved.

A permanency-planning hearing (PPH) took place on April 13, 2021.  In the order entered the same day, the circuit court indicated that appellant is the biological father of MC based on the results of the genetic test performed and appointed him counsel.  The circuit court changed the case's goal from reunification to adoption and termination of parental rights.

DHS filed a petition for the termination of both parents' parental rights on June 9. It alleged that appellant's parental rights should be terminated because he was sentenced in a criminal proceeding for a period of time that would constitute a substantial period of MC's

life;[2] and because of aggravated circumstances, in that there is little likelihood that services to appellant would result in successful reunification.[3]

The termination hearing took place on November 2. At the conclusion of the hearing, the circuit court took the matter under advisement. The order terminating appellant's parental rights to MC was filed on March 2, 2022. In the order, the circuit court found that termination was in MC's best interest taking into account adoptability as well as potential harm if returned to either parent. The circuit court also found that DHS had proved its grounds for termination against appellant. The order stated in pertinent part:

> Pursuant to ACA §9-27-34 l(b)(3)(B)(iii) [sic], the legal father was sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life. On November 20, 2019, the legal father entered a guilty plea as a habitual offender in the Circuit Court of Jackson County, Arkansas, to the criminal charges of Possession of Methamphetamine or Cocaine with the purpose to deliver = >10g < 200g (Class A felony) and Possession of Schedule VI controlled substance with the purpose to deliver = >4oz < 25 lbs. (Class B felony). He was sentenced to serve 16 years [in] the ADC followed by 30 years SIS and 30 years SIS, concurrently and he remains incarcerated today. The legal father has no [meaningful] relationship with the juvenile and has never provided any support financially or otherwise. The Court must consider the legal father's sentence regardless of any possibility of release or parole dates. Assuming that the father's sentence was fully executed the juvenile would be over 15 years of age at the time of discharge which would constitute a substantial period of time in the juvenile's life. Thus, the Court finds this ground by clear and convincing evidence and the Department's petition should be granted.

> Pursuant to ACA § 9-27-34l(b)(3)(B)(ix)(a) [sic], the parents are found by the Court to have subjected the juvenile to aggravated circumstances in that there is little likelihood that services to the family will result in successful reunification. . . . Further, due to the father's own conduct he has been unable to participate in services, however, this has resulted from his own decisions and is not the fault of the juvenile.

---

[2]Ark. Code Ann. § 9-27-341(b)(3)(B)(viii) (Supp. 2021).

[3]Ark. Code Ann. § 9-27-341(b)(3)(B)(xi)*(a)*.

The juvenile has a right to permanency and she should not have to wait any longer than the time frame set by Arkansas law, which has now expired. Therefore, there is little likelihood that any further services to the family would result in a successful reunification and the Department's petition should be granted.

. . . .

A. As to the juvenile's adoptability, the Court finds that the juvenile is adoptable because there are no barriers to adoption and there is a family interested in adoption. The juvenile has been in the home of Randy and Christy Murphy since placement and they have provided the juvenile with the care, safety and the love the juvenile deserves. The juvenile has bonded extremely well with the Murphy family and the placement arrangement has also allowed her to have regular contact with other blood family members. Further, the juvenile is of a young age, in good health and this couple has expressed interest in adoption.

B. As to potential harm, the Court finds that the juvenile would be subjected to potential harm because of the parents' long history of drug use disorders, past criminal activities and that both parents are incarcerated. Further, the legal father has never established a parental relationship with the juvenile.

Appellant filed a timely notice of appeal on March 15.

We review termination-of-parental-rights cases de novo.[4] Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established.[5] The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[6] A finding is clearly

---

[4]*Parnell v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 108, 538 S.W.3d 264.

[5]*Id.*

[6]*Id.*

erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[7] In resolving the clearly-erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.[8] On appellate review, this court gives a high degree of deference to the circuit court, which is in a far superior position to observe the parties before it.[9] Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[10]

The purpose of the termination-of-parental-rights statute is to provide permanency in a child's life in all instances in which the return of the child to the family home is contrary to the child's health, safety, or welfare, and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. To terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition

---

[7]*Id.*

[8]*Camarillo-Cox v. Ark. Dep't of Hum. Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005).

[9]*Id.*

[10]*Friend v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 606, 344 S.W.3d 670.

is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[11] The circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exist.[12]

The circuit court terminated appellant's parental rights on both grounds alleged by DHS. Appellant concedes that the evidence was sufficient to support at least one ground. However, he contends that the circuit court erred by terminating his parental rights to MC because termination was not in her best interest. Appellant does not specifically challenge the adoptability or the potential-harm findings. Instead, he contends that these are not the only factors to consider when deciding whether termination is in a child's best interest, and he makes several subpoints to illustrate that the circuit court erred.

In one subpoint, appellant argues that DHS failed to preserve the family unit when it did little more than have him submit to DNA testing. He argues that although he was listed as the putative father and DHS knew his whereabouts, there were no efforts made for him to participate in the hearings. Specifically, he claims to have only participated in one hearing prior to the termination hearing. Appellant has failed to offer any citation to authority to support this argument. We do not consider arguments unless they are sufficiently developed and include citation to authority.[13] Additionally, there is no

---

[11]Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).
[12]Ark. Code Ann. § 9-27-341(b)(3)(B).

[13]*Richards v. Richards*, 2022 Ark. App. 309, 651 S.W.3d 190.

indication that the circuit court was presented with, or made a ruling concerning, this argument. An issue raised for the first time on appeal or not ruled on by the circuit court is not preserved for our review.[14]

As best as can be determined, in his other subpoints, appellant contends that there is no evidence that he received a copy of the adjudication order; he was not made a party until after the PPH when the DNA results were introduced despite an order for testing in June 2020; there was little contact between him and DHS during the case; DHS never contacted his family for potential placement, even though he had provided Powers with names and numbers of family members;[15] his preference was guardianship, not termination of parental rights, but he was not represented at the PPH and was unable to argue guardianship as an alternative or be advised on how to appeal the order;[16] and MC's maternal placement never testified at the hearing, so there was no way of knowing if she preferred adoption to guardianship. Appellant also appears to question the initial finding of dependency-neglect.

---

[14]Paschal Heating and Air Conditioning Co., Inc. v. Zotti, 2021 Ark. App. 372.

[15]MC was placed with her maternal great aunt after she was removed from her mother where she remained throughout the case.

[16]In the order from the PPH, appellant was found to be MC's legal parent and was appointed counsel. Appellant alluded to his preference of guardianship at the termination hearing, but he did not get a ruling. Additionally, appellant failed to bring up the record of the PPH when the goal was changed from reunification to adoption. *Cole v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 481, 611 S.W.3d 218.

7

However, these subpoints suffer the same flaws as above in that there is no citation to authority, and there is no indication that they are otherwise preserved for our review.

There is another subpoint that deserves recognition. Appellant contends that this case is like *Borah v. Arkansas Department of Human Services*.[17] In *Borah*, we held that the circuit court clearly erred by failing to consider placement with the paternal grandmother as a less restrictive alternative to termination even though she had requested to be considered. We find *Borah* distinguishable because, unlike in *Borah*, MC was already placed with a maternal relative, and any possible paternal relatives were unknown. Thus, *Borah* does not support reversal of the circuit court's best-interest finding. Accordingly, we affirm.

Affirmed.

KLAPPENBACH and GRUBER, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.

---

[17]2020 Ark. App. 491, 612 S.W.3d 749.